Eastern Dist.
*March*, 1840.

HART *vs.* THOMPSON'S EXECUTOR AND LEGATEES.

HART
*vs.*
THOMPSON'S
EXECUTOR AND
LEGATEES.

APPEAL FROM THE COURT OF PROBATES FOR THE PARISH OF IBERVILLE.

Where it is shown that a testator is subject, from intemperance, to spells of insanity, which become general by long indulgence, but the witnesses to the will testify that he was sober and rational at the time of signing, he will be deemed competent to make a valid will.

Sealing and closing a mystic will with wafers, and making the witnesses sign across and between the wafers on the envelope, is a sufficient sealing and closing, within the meaning of the law, without the use or impress of a seal.

An attorney at law cannot be required to disclose communications of a deceased client, relative to dispositions in his will. There is no distinction between the case, where a party continues to be the client of the attorney, and when he is dead.

The plaintiff, Martha Hart, a widow, residing in Tennessee, alleges, she is the sister of Joseph Thompson, late of the parish of Iberville, who died without leaving any *legitimate* heirs, ascendants or descendants; and that she is his nearest collateral and sole legal heir. She alleges, that the will of her deceased brother, which has been admitted to probate, is null and void on several grounds.

1. That the testator was not of sound mind at the time of making the will, and had been insane for several years before signing it.

2. The will was not closed and *sealed*, as required by law, being only sealed with common wafers, without any impress of a seal or stamp.

3. That the legal formalities prescribed for mystic wills in articles 1577 and 1578, have not been complied with, and that the will was not presented sealed and closed to the notary and seven witnesses, by the testator, nor did he declare to the notary, in the hearing of the witnesses, that the package or envelope contained his last will and testament.

4. That the testator did not sign the *procès verbal* or superscription in the presence of seven witnesses, and that it was not read to the testator and witnesses.

EASTERN DIST.
March, 1840.

HART
vs.
THOMPSON'S
EXECUTOR AND
LEGATEES.

5. The formalities prescribed in the 1577th article of the code were not done and performed at one time, without interruption, and turning aside to other matters.

6. That one of the witnesses was incompetent, being deaf.

The petitioner further alleges, that even if the will be sustained, some of the legacies are illegal and reducible. That there are disguised donations and illegal dispositions, by means of persons interposed; and especially, the universal legacy in favor of Charles H. Dickinson, is void; being a *fidei commissa*, to be by him preserved and kept as a bequest or donation to Joseph Thompson, a natural and illegitimate child of the deceased.

Various other grounds of illegality are set up against the will, and the dispositions made in it.

The petitioner prays that this will be annulled, and that she be declared the lawful heir of her deceased brother; or if it be sustained, that the dispositions therein be reduced to the disposable portion in her favor.

The executor and others, representing the legatees pleaded a general denial.

There was much testimony taken relative to the state of mind and condition of the testator, at and for some time before making his will. It was shown that he was a man of intemperate habits for several years before his death, and whilst intoxicated appeared insane; but the witnesses to the will stated, that he was cool, and appeared perfectly sane, at the time of making the will. One witness called, but who had not attested the will, declared he knew the testator for ten or fifteen years before his death, and that he was an industrious man, and prudent in his transactions. Knew him to drink at times. He had spells of intemperance and spells of sobriety. Whenever he was in a drinking spell he was crazy and foolish, but when sober, would regret his conduct whilst drinking. Saw him on the day he presented his mystic will to the parish judge, and found him of sound mind, and capable of transacting any kind of business.

On hearing the testimony, the judge of probates overruled

EASTERN DIST.
March, 1840.
all the objections to the will, and gave judgment against the plaintiff, and she appealed.

HART
vs.
THOMPSON'S
EXECUTOR AND
LEGATEES.

*Labauve* and *Edwards*, for the plaintiff.

*Winchester* and *Ives*, contra.

*Morphy, J.*, delivered the opinion of the court.

The plaintiff, alleging herself to be the legitimate sister of Joseph Thompson, deceased, seeks to annul and set aside the last will of the latter, and, in case the will is not avoided *in toto*, to have certain legacies therein contained, annulled. Of all the grounds assumed by counsel, it is thought necessary to notice only the following :

1. The insanity of the testator.

2. The failure to comply with article 1577 of the Louisiana Code, in properly closing and sealing the will.

3. The fact that the universal legacy to C. H. Dickinson contains a *fidei commissum*, by which said apparent legatee undertook to keep the property for, and return it to Joseph Thompson, the natural child of the testator.

I. The testimony shows that the deceased was addicted to drinking. He had, say the witnesses, spells of intemperance and spells of sobriety ; that whenever he had been drinking for some time, he turned crazy, extravagant and foolish ; but when sober again, he was perfectly rational. His physician testifies, that when in his fits of intemperance, Thompson became deranged, and delirious from intoxica-

*Where it is shown that a testator is subject, from intemperance, to spells of insanity, which become general by long indulgence, but the witnesses to the will testify that he was sober and rational at the time of signing, he will be deemed competent to make a valid will.*

tion ; but that afterwards, his mind resumed its strength and business habits fully ; that when sober, his mind, knowledge and attainments were above mediocrity ; that he never considered Thompson's a case of insanity. By other witnesses, he was not thought to be generally of sound mind. He is represented by the witnesses who signed with him the act of superscription of his will, to have been, on that occasion, perfectly sober, self-possessed and rational. The parish judge had seen Thompson, and conversed with him several times within the last month previous to the making of his will, and found him of perfectly sound mind before and at

that time; but he adds, that some months before, Thompson had been quite deranged from the effects of hard drinking. The impression made on our minds by the whole testimony adduced on this head is, that even admitting the general insanity of the deceased, which is by no means satisfactorily proved, there is abundant evidence that he was *compos mentis* and fully competent to make a will at the time he appeared before the parish judge for that purpose.

EASTERN DIST.
*March*, 1840.

HART
*vs.*
THOMPSON'S
EXECUTOR AND
LEGATEES.

II. It is said that the will is null, because it has not been closed and sealed according to law; no stamp or impress having been used by the testator. To show this, the original paper which enclosed the will has been sent up with the record. It appears to have been closed and sealed with three wafers, but no trace appears of the impression of any stamp. We are told that these expressions *clos et scellé*, used in the French text of article 1577 of the Louisiana Code, of which the English is a translation, are borrowed from the Napoleon Code, and that to ascertain their meaning we must look to the commentators on that code, and the decisions made under it in France. We find some contrariety of opinion among the French jurists as to their true meaning. The weight of authority appears decidedly in favor of a rigid and literal construction, requiring a stamp or impress to be used in the sealing of mystic wills, and pronouncing their nullity when they are closed only with wax or wafers, without any seal. Others have thought that article 976, of the Napoleon Code, did not contemplate absolutely, and under pain of nullity, that any seal or stamp should be used. Malleville, in commenting upon it, says : " *Suit-il de ces termes que sur la feuille contenant le testament ou sur le papier qui lui servira d'enveloppe, le testateur soit obligé, à peine de nullité, d'imprimer un cachet ordinaire ? Je ne le crois pas. Il y a tant de testateurs, surtout dans les campagnes qui n'ont pas de cachet ou de sceau. La loi a seulement entendu dire que le testament fût clos et fermé de manière à ce qu'on ne pût pas l'ouvrir sans déchirer le papier et sans laisser vestige de la rupture.*'" *Analyse raisonnée du Code Civil,* 2e. *Vol.,* page 390. *Vazeille, Résumé des Conférences,* 2e. *Vol. p.* 476.

EASTERN DIST.
*March*, 1840.

HART
*vs.*
THOMPSON'S
EXECUTOR AND
LEGATEES.

We are inclined to adopt the latter opinion. Although not so strongly supported, or so generally received as the other is in France, it comports better with the manners and habits of this country, where the use of seals is rather uncommon, and where we understand the law to have already received this construction in practice. The Louisiana Code, article 1577, does not prescribe how and in what way mystic wills are to be sealed, nor does article 1644, which treats of the probate of such instruments, say a word about the necessity of a seal appearing to have been affixed. It requires only proof of the signatures of the witnesses to the act of superscription, and their declaration that they recognize the sealed packet presented to them as the same one handed to the notary by the testator as containing his last will. Usage, no doubt, went a great way in France in determining the meaning of the words used in article 976, of the Napoleon Code. The provision itself was taken from the ordinance of 1735, which prescribed that mystic wills should be closed and sealed "*avec les précautions en tel cas requises et accoutumés.*" In that country, the use of seals was formerly as general as it is unusual in ours. The danger of the will being changed or altered, is given by the writers as the reason why the impression of a stamp is required. It is said to be a necessary precaution against the fraudulent opening of the envelope. This reason is far from being conclusive. The law has not determined what that seal or impress should be. It has not provided that the seal used shall be described *ne varietur* in the act of superscription. If, then, no particular seal is mentioned in that act, what protection or security does a seal afford, which can be broken open and replaced by any other seal. This omisssion of the lawgiver, to explain what was the sealing in his contemplation, authorizes us, we apprehend, to take the word in its ordinary acceptation, and as understood by the community generally. *Louisiana Code, article* 14. Webster's Dictionary informs us that fastening with wafers is sealing, and common usage, not only in Louisiana, but throughout the United States, sanctions that use of the word. It is only necessary, then,

to examine whether the packet has been carefully closed and sealed, and whether it has, in reality, remained untouched. These circumstances are generally attested by the judge of probates in drawing up his *procès verbal* of proofs. In the present case, a precaution has been taken by the notary, which seems to us to afford more security than any seal or stamp that could have been used. It was making the witnesses sign across and between the wafers, sealing the envelope of the will so that it could not possibly be opened without tearing or defacing their names. This, we think, was a sufficient *closing* and *sealing*, within the meaning of our code.

III. The charge that the legacy to Dickinson was a *fidei commissum* is unsupported by the evidence. Our attention has been drawn to a bill of exceptions to the opinion of the judge below, sustaining an objection to the testimony of one G. Taylor, who had been the counsel of the deceased. He was called upon to disclose certain confidential communications supposed to have been made to him by his late client in relation to his last will. The judge, we think, decided correctly. We cannot admit the distinction pressed upon us by appellant's counsel between the case where a party continues to be the client of the attorney, and that when he has ceased to be his client, at the time the attorney is called upon to testify. We do not think it necessary neither, to exclude such testimony, that the client should be a party to the suit in which it is offered ; nor do we understand why the courts should feel themselves authorized to supply the consent of a client who has died without giving it. *Louisiana Code, article* 2262.

It is therefore ordered that the judgment below be affirmed with costs.