351 So.2d 107 (1977)
Succession of Annie M. NORTON.
Nos. 59626, 59693.
Supreme Court of Louisiana.
October 10, 1977.
*108 Sidney E. Cook, Cook, Clark, Egan, Yancey & King, Shreveport, for defendant-applicant.
John R. Pleasant, Booth, Lockard, Jack, Pleasant & LeSage, Shreveport, for plaintiff-respondent.
CALOGERO, Justice.
In connection with this succession proceeding, relators sought to depose an attorney and member of the law firm which had over the years represented the testatrix, Annie Norton, her husband Richard W. Norton, Sr. and her son Richard W. Norton, Jr. Relators also sought to subpoena the law firm's records which related to the Nortons' financial affairs and estate planning. The trial court sustained the motion to quash the subpoena duces tecum and denied relators the right to depose the attorney. After applications for supervisory writs in the Court of Appeal were denied, we granted writs sought by relators. 345 So.2d 55 (1977).
Richard W. Norton, Sr. died in 1940. He was survived by his widow, Annie Norton, and their sole child, Richard W. Norton, Jr. In 1950 Annie Norton confected and executed the will which is at issue in these succession proceedings. Pertinent to the legal issues here involved, Mrs. Norton made no bequests of any substance[1] in favor of her son, Richard, Jr., nor her son's children, Richard W. Norton, III and Maxwell L. Norton (for they were born after execution of the will). She made bequests, mostly lifetime monthly annuities, to numerous *109 persons, principally to collateral relations, referred to in these proceedings as Rosalie Norton Roberts et al. The great bulk of her substantial estate was left to the R. W. Norton Art Foundation. Mrs. Norton designated Commercial National Bank in Shreveport testamentary executor and trustee for the art foundation. She also named as attorney to handle all legal matters in connection with her estate F. Leonard Hargrove (and alternately James A. Van Hook) of the law firm Hargrove, Guyton, Ramey and Barlow. A significant provision of the will directed the testamentary executor to pay all estate, inheritance, legacy, succession or transfer taxes.[2]
Richard W. Norton, Jr. died in 1974. His mother, Annie Norton, died in 1975.
Mr. Hargrove and his law firm had over the years represented Richard Norton, Sr., Annie. Norton, Richard Norton, Jr., the R. W. Norton Art Foundation and, at least for a brief time, Richard Norton, Jr.'s two children, Richard W. Norton, III and Maxwell Norton.
Mr. Hargrove and his wife were named in Annie Norton's will as legatees to annuities comparable to similar annuities to the collaterals. He and his wife renounced this bequest, however, and thereafter he and his law firm chose to represent neither the testamentary executor, the Norton grandchildren nor any party in this litigation.
After Annie Norton's olographic will was admitted to probate, suit was instituted by her two grandchildren who asserted their rights as forced heirs to the legitime, or one-third of their grandmother's estate.
They contend that the legitime had been denied their father, that they should receive same from their grandmother's estate by representation of their father (La.Civ.C. art. 1493, 895) and that receipt thereof should be free and clear of estate and other taxes and expenses due by the succession of their grandmother (the latter apparently by virtue of the provisions of the will quoted in footnote two above).
A detailed descriptive list of property comprising the estate of the deceased was filed in the succession proceedings showing an estate net value of $6,787,407.17. Cost to the estate of the individual bequests to the collaterals is estimated to be approximately $500,000.
In response to the grandchildren's petition to reduce dispositions made in the last will and testament, that pleading by which the grandchildren seek to assert their right to the legitime, the executor (and collaterals) filed an answer in which they contend that the legitime reserved to petitioners by representation of their father, Richard, Jr. had been satisfied by the donations inter vivos made to their father during his lifetime. The executor alternatively alleged that should petitioners be entitled to any additional sums in satisfaction of their legitime interests, that all state and federal estate, inheritance or other taxes attributable to that legitime interest should be borne and paid solely by the grandchildren.
The executor and collaterals contend that confection of the last will and testament of Annie Norton was but one step in an overall estate plan fashioned for devolution of the substantial estate amassed by Richard Norton, Sr. and Annie Norton, implemented with the assistance of F. Leonard Hargrove, the senior partner (now deceased) of Hargrove, Guyton, Ramey and Barlow and that adequate provision was made to satisfy the legitime of Richard Norton, Jr. It is further contended that provision to that effect had been made, so that the clear dispositive provisions of Annie Norton's will could and would be effective.[3]
*110 Consistent with this position, desirous of proving that Richard, Jr. had enjoyed his legitime by inter vivos donations, and having no access to files and/or counsel of testatrix' attorney (inasmuch as F. Leonard Hargrove, and his law firm, although designated attorney for the succession, had chosen not to represent the executor) the executor with the collaterals joining them, filed and had served the subpoena duces tecum directed to the Hargrove firm, through Cecil E. Ramey, Jr., and noticed the taking of Mr. Ramey's deposition.
The subpoena duces tecum in fifteen explicit paragraphs called for production from files of the Hargrove firm of all correspondence, memoranda, notes, records, reports (including estate plans) to and/or from Richard Norton, Sr., Annie Norton, Richard Norton, Jr., members of the law firm and/or any certified public accountant firm, concerning the estates, trusts and/or wills of Richard, Sr., Annie and Richard, Jr., and all inter vivos or testamentary dispositions of Richard, Sr., Annie and/or Richard, Jr. The subpoena duces tecum also called for any personal memoranda, records, notes or correspondence relating to the physical or mental condition of Annie M. Norton subsequent to November 29, 1950, the date her will was executed. The substance of the noticed oral deposition of Mr. Ramey was evident from the nature of the subpoena duces tecum.
In response to the subpoena duces tecum and notice of deposition, the grandchildren filed a motion to suppress the subpoena and for a protective order.
The grandchildren urged in support of their pleadings that discovery under Article 1422 of the Code of Civil Procedure is only available "regarding any matter not privileged which is relevant to the subject matter involved in the pending matter;" that the data requested was irrelevant to the claim filed by the grandchildren; that Annie Norton's physical and/or mental condition subsequent to the date of her will was wholly irrelevant; that the data would not and could not change the provisions of the will of Annie Norton nor the Louisiana law fixing rights of forced heirs; that mover's attorneys had already been furnished copies of all donations inter vivos made by the decedent, Annie Norton, from 1935 to the date of her death; that data relative to the estate of Richard Norton, Sr. and Richard Norton, Jr. were irrelevant; that as to the succession of Richard Norton, Jr., the Commercial National Bank of Shreveport was executor and trustee of a trust established by Richard Norton, Jr. and therefore had all information regarding that estate; that all documents requested represented privileged communications between attorney and client under Louisiana Civil Code Article 2283 and were not subject to subpoena by third parties; that movers were claiming this privilege as forced heirs of Annie Norton and as children and heirs of their father, Richard Norton, Jr., and also on behalf of their deceased grandfather, Richard Norton, Sr.
After presentation of arguments, the trial judge quashed the subpoena duces tecum and overruled the notice of intent to depose Mr. Ramey. It is this ruling of the trial court which we review herein.
Although the record herein does not reveal the trial court's reasons for the ruling, the pleadings and arguments of respondents suggest that the trial court determined that:
1) Annie Norton's physical and/or mental condition after execution of her will in 1940 was irrelevant;
2) the Hargrove law firm's documents and the attorney deposition relating to the *111 estates, trusts, wills and estate planning of Richard Norton, Sr., Annie Norton and Richard Norton, Jr. (other than that relating to inter vivos donations of Annie Norton, as to which respondent contends he has already given information contained in tax returns) were irrelevant to the legal matters at issue in the litigation; and,
3) the documents and testimony sought represent privileged attorney/client communications not subject to discovery.
It is of course true that whether Richard, Jr.'s legitime had been satisfied during his mother's lifetime is governed exclusively by whether there were inter vivos donations in adequate amount, La. Civ.C. arts. 1502-05, and that evidence beyond that would likely be inadmissible at trial. Nonetheless, under the broad scope of discovery allowed in Louisiana, relators are entitled to discover more than simply admissible evidence. They may discover matters inadmissible as evidence at trial if it appears reasonably calculated to lead to the discovery of admissible evidence. Furthermore, proof of inter vivos donations is not to be restricted to that information furnished by respondent from tax returns which were filed. In this regard Code of Civil Procedure, Article 1422 is particularly pertinent and states in part:
"Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence."
In the present case the information sought through documents and depositions relating to the estates, trusts, wills and estate planning of Richard Norton, Sr., Annie Norton, and Richard Norton, Jr. appears "to be reasonably calculated to lead to the discovery" of evidence directly related to the determinations of whether the respondents' father had already received part or all of his legitime during his lifetime.
One of the basic notions relative to a court's interpretation of our rules on discovery is that these rules should be liberally construed in favor of discovery wherever possible. Any issue of relevancy is necessarily dependent upon the surrounding circumstances and legal framework within which the issue is presented. In the present case a legal principle of particular importance is La.Civ.Code art. 1672. It provides as follows:
"The testamentary executor is bound to see the testament faithfully executed."
Here, relator contends that the testament which the executor is bound to discharge was drafted amid a complex series of intra-family financial transactions, performed with the aid of experienced counsel. It would certainly be illogical to presume that the testatrix or her counsel intended that these transactions result in a will which could not be carried out. Accordingly, we find that since the records requested concerning the estates, trusts, wills and estate planning of Richard, Sr., Annie and Richard, Jr., may be relevant to a proper determination regarding the devolution of Mrs. Norton's estate and are certainly reasonably calculated to lead to the discovery of relevant evidence, they are discoverable under Code of Civil Procedure Article 1422 unless they represent privileged attorney/client communications.
Such a conclusion is not warranted, however, in regard to relator's request concerning the documents and information relative to Annie Norton's mental and physical condition after the execution of her will. It cannot be said that such information is relevant to any issue presented in this case. We are not confronted with questions concerning the validity of Mrs. Norton's will (an issue to which such information might *112 be relevant). Rather, we are solely concerned with arrangements made for the satisfaction of Richard Norton, Jr.'s legitime. Therefore, such requests relative to the testatrix' mental and physical condition following the execution of her will was properly denied by the trial court.
Under the above quoted provisions of Civil Code Article 1672 an executor of a will is charged with seeing that the testament is faithfully executed. In the fulfillment of this obligation the executor is usually assisted and counseled by an attorney for the estate who has previously counseled the testatrix and is thereby in a position to discover the types of facts which are at issue here. The present executor does not have such an opportunity because the designated attorney has opted not to represent the estate. The executor, faced with attacks upon the provisions of the will which would conceivably annul these provisions, has sought documents and information relevant to a proper determination of the testatrix' intent, and relevant to ascertaining whether Richard, Jr.'s legitime has been satisfied. The executor has been denied same upon assertion of an attorney/client privilege.
An outset question concerning the attorney/client privilege is whether respondents, the grandchildren, have standing to invoke the privilege on behalf of their grandparents and their father, who are deceased. Perhaps they have no standing to complain. On the other hand we are loathe to disregard the decedents, and any legitimate interest which would be served to their memories, and the viability of the attorney/client privilege by opting not to enforce it because of any such lack of standing.[4] Consequently we choose to decide the issue before us on a basis other than the standing of the respondents to invoke the privilege.
Louisiana Civil Code Article 2283 prohibits an attorney's giving evidence of anything confided to him by his client without the consent of that client. While it is generally true that the death of the client does not terminate the privilege, Morris v. Cain's Ex'rs, 39 La.Ann. 712, 1 So. 797 (1887), an exception to this rule has been adopted by most courts when confronted with issues relevant to a deceased client's testament. This exception has been stated thusly:
"In controversies between heirs at law, devisees, legatees, or next of kin of the client, such communications (attorney/client) should not be held privileged, because in such case the proceedings are not adverse to the estate. The interests of the deceased client demand that the truth be determined."
9 Wigmore, Evidence § 239 (McNaughton Rev. 1969).
Some jurisdictions make the exception absolute and allow discovery of testamentary communications in all cases.[5] Others have only adopted a qualified version. In these latter jurisdictions discovery is not permitted when the party seeking discovery has adopted a position adverse to the testamentary dispositions of the decedent. Discovery in such situations is neither warranted nor desirable. Glover v. Patten, 165 U.S. 394, 17 S.Ct. 411, 41 L.Ed. 760 (1897); Doyle v. Reeves, 112 Conn. 521, 152 A. 882 (1931). See also, 81 Am.Jur.2d Witnesses § 201 (1976). Such a case in our own jurisprudence is Hart v. Thompson's Ex'r, 15 La. 88 (1840), wherein this Court denied a party's discovery efforts as that party sought such information for the purpose of defeating the testator's will and its provisions.
In the present case we are not confronted with an attack upon the testator's will or its *113 provisions. Rather, relators seek the requested information in an effort to carry out and uphold the decedent's testamentary dispositions. Accordingly, we find it unnecessary to reassess this Court's decision in Hart and determine whether the general exception allowing discovery of testamentary communications should be held inapplicable where the objective of discovery is to attack the testamentary disposition. We conclude that the attorney/client privilege does not bar discovery where, as here, the object is to give effect to the testatrix' will and its provisions.
For the above reasons we affirm the trial court's decision denying the requested discovery of information relative to Annie Norton's mental and physical condition subsequent to the execution of her will, but reverse the trial court's decision quashing the subpoenas and prohibiting the discovery of information through documents and deposition relative to the estates, trusts, wills and estate planning of Richard Norton, Sr., Annie Norton and Richard Norton, Jr.
SUMMERS, J., concurs in part and dissents in part with reasons.
SUMMERS, Justice (Concurring in part and dissenting in part).
I concur with the ruling denying the requested discovery of information relative to Annie Norton's mental and physical condition subsequent to the execution of her will, but dissent from the decision requiring discovery otherwise.
NOTES
[1] She left her son a family cemetery plot and certain personal effects.
[2] The provision directed the executor to pay "as part of the expenses of the administration of [the] estate all estate, inheritance, legacy, succession or transfer taxes . . . with respect to all property taxable under such laws by reason of my death, whether or not such property passes under this my will and whether or not such taxes be payable by my estate or by any recipient of such property, and my executor shall not deduct from any gift devise or bequest or claim from any such recipient, any such taxes or any part thereof."
[3] Relators argue that Annie Norton undoubtedly was aware of the forced heirship rights of her son and would not have excluded him from bequests in her will but for the fact that she had already afforded him his legitime by inter vivos donation(s). Furthermore, relators point out and support by hypothetical computation, that if the grandchildren should prevail in this quest for a one-third legitime interest and payment of all federal estate and state inheritance taxes by the succession, there will remain no property in the estate to devolve upon the only legatees named in the will, namely, the R. W. Norton Art Foundation and the collaterals. Their not implausible contention is that Annie Norton cannot be presumed to have either overlooked or intended a consequence which would negate her testamentary expressions.
[4] With respect to the law firm which is in possession of the requested documents we note that they have not made an appearance or taken a position in this litigation other than neutrality, nor have they contended that the requested production would be unduly burdensome.
[5] See e. g., Seeba v. Bowden, 86 So.2d 432 (Fla. 1956); Adams v. Flora, 445 S.W.2d 420 (Ky.1969).