589 So.2d 1127 (1991)
Andree PITARD
v.
STILLWATER TRANSFER AND STORAGE COMPANY, et al.
No. 90-CA-1471.
Court of Appeal of Louisiana, Fourth Circuit.
November 7, 1991.
William D. Treeby, Randall A. Smith, Angela J. Crowder, Stone, Pigman, Walther, Wittmann & Hutchinson, New Orleans, for plaintiff-appellant Andree Pitard.
James R. Carter, Robert F. Lakey, Porteous, Hainkel, Johnson & Sarpy, New Orleans, for defendants-appellees Stillwater Transfer & Storage, Inc. and John E. Scott.
Mary Clare Hartman, Hartman & Associates, Metairie, for defendants-appellees Gaylord Wilson, Nat. Enterprises, Inc., and U.S. Fidelity & Guar. Co.
Before SCHOTT, C.J., and KLEES, LOBRANO, WARD and PLOTKIN, JJ.
KLEES, Judge.
Plaintiff appeals the trial court's judgment awarding her $285,000 for injuries she received in an automobile accident. Plaintiff claims that the amount of damages determined by the jury is inadequate, and that the trial judge erred in denying her post-trial motions for judgment N.O.V. and additur. After reviewing the record, we increase the plaintiff's award to $400,000.
On June 4, 1986, plaintiff Andree Pitard was a passenger in a vehicle struck by a tractor trailer on the I-10 expressway near LaPlace, Louisiana. Ms. Pitard, a then thirty-six year old attorney, received numerous injuries, including a lacerated lip, a fractured shoulder, a broken rib, a compression *1128 fracture in the lumbar region of her spine, trauma to the previously injured cervical area of her spine, and internal abdominal injuries. She underwent abdominal surgery and was hospitalized for a month. At the time of trial, she was still undergoing physical therapy for her back and shoulder disabilities and was taking several medications on a regular basis. She had ceased working due to her physical problems.
Plaintiff brought suit against Gaylord Wilson, the driver of the vehicle in which she was riding, and John Scott, the driver of the tractor trailer. The case was tried before a jury on November 2, 6, 8 and 9, 1989. The jury returned a verdict in favor of plaintiff in the amount of $285,000, assigning 75% negligence to defendant Wilson and 25% to defendant Scott. Judgment was entered in accordance with the jury verdict against both individual defendants and their respective employers and insurer.
Liability is not contested; the sole issue on appeal is quantum. Following trial, plaintiff filed motions for judgment N.O.V. and additur, which were heard on January 19, 1990. The trial judge denied these motions with written reasons, stating "Although in my mind, a preponderance of the evidence establishes that Ms. Pitard's damages are $600,000.00, primarily because I believe that her injuries from the accident forming the basis of this suit prevent her from practicing law, I just cannot say that reasonable minds could not differ as to the quantum of damages."
Plaintiff now appeals the denial of these motions and the original judgment. At trial, the issue of quantum was complicated by the fact that plaintiff had been involved in three prior automobile accidents, including one in June of 1983 in which she had seriously injured her neck and back. She was still suffering from these injuries when she was re-injured on June 4, 1986, the accident which forms the basis of this appeal. On appeal plaintiff contends that the trial court erred: (1) by allowing the introduction of a privileged communication into evidence, and (2) by refusing to raise the amount awarded by the jury to $600,000 or grant a new trial.
Plaintiff's first assignment of error has merit. During his cross examination of plaintiff, counsel for defendants introduced into evidence a letter written by Ms. Pitard to her trial counsel Mr. Leonard Radlauer in June of 1987. In the letter, Ms. Pitard lists all of her medical treatment related to the June 27, 1983 accident, for which Mr. Radlauer had filed a separate suit in Jefferson Parish. The letter also states: "I have included Dr. Russo's office visits and Metairie Physical Therapy after the June 4, 1986, accident since they are directly related to both the June 27, 1983, accident and the June 4, 1986, accident."
The plaintiff was obviously surprised by the introduction of the letter, calling it "a private letter written to my attorney." She stated that she had never testified that the bills in question were related to any accident other than the 1986 one and that she had never been reimbursed for them. The defendants' counsel used the letter to try to create an impression in the minds of the jury that Ms. Pitard was seeking double recovery for these medical bills.
According to defendants' counsel, the letter was found by him in a large stack of medicals produced by Mr. Radlauer. Mr. Radlauer maintained that his disclosure of the letter was inadvertent.
Communications between a client and his attorney made with the expectation of confidentiality are protected by the attorney-client privilege, and cannot be disclosed without the client's permission. La. R.S. 13:3734.3; Succession of Smith v. Kavanaugh, Pierson & Talley, 513 So.2d 1138 (La.1987). R.S. 13:3734.3 states: "No attorney or counselor at law shall give evidence of anything that has been confided to him by his client, without the consent of the client...." As the client is the holder of the privilege, the power to waive it is his alone. Smith, supra, at 1143.
Although the Louisiana courts have not considered specifically whether the privilege can be waived by the attorney's inadvertent disclosure of a communication, *1129 we find that it cannot, because such a disclosure is without the consent of the client and therefore violates R.S. 13:3734.3. In this case, the record clearly reflects that the plaintiff believed the letter was confidential.
The record also reflects that the use of the letter, which was also mentioned in the closing argument of defendants' counsel, had a prejudicial effect upon plaintiff's case. In his reasons for judgment, the trial judge indicated that the most probable reason for the jury having returned a verdict of less than $600,000 was their belief that plaintiff's inability to ever again work as an attorney was a result of the 1983 accident rather than the 1986 accident. The extent to which the 1986 accident aggravated Ms. Pitard's preexisting back condition was a key issue in the case. Under the circumstances, we find that the allowance of the letter into evidence was a consequential error.
Defendants argue strenuously that the introduction of the letter cannot be urged as an error on appeal because it was not objected to by plaintiff's counsel at trial. We disagree. The record shows that there was a bench conference requested by Mr. Radlauer at the moment the letter was first mentioned. Then, at the conclusion of the testimony on that day, Mr. Radlauer stated that he wanted to put his objection to the letter on record. The trial judge then confirmed on the record that Mr. Radlauer had objected to the letter during the bench conference, although he had not asked at that time for the objection to be put on the record. Mr. Radlauer then responded that he was used to having the court reporter "sneak up" and record what occurs during a bench conference.
An objection affords the trial court the opportunity to prevent or correct the alleged error. Deville v. Fields, 546 So.2d 332, 334 (La.App. 3d Cir.1989), citing Bertoli v. Flabiano, 116 So.2d 76 (La.App. 1st Cir.1959). In the instant case, the trial judge obviously had that opportunity when the letter was objected to during the bench conference, even though the objection was not recorded in the transcript at that moment. Although the circumstances are unusual, we find that the objection was timely. Deville v. Fields, supra, the case relied upon by defendants to show that the objection was not timely made, is inapposite. In that case, the court held that the plaintiff could not object for the first time on appeal to matters which he had failed to object to during trial. Id. at 334. In the instant case, plaintiff objected at the bench before the letter was introduced, and then placed his objection on the record at the close of testimony that day. We therefore find that a timely objection was made, and the admission of the letter was a consequential error that must be corrected on appeal.
When a trial court makes a consequential error in the admission of evidence, the appellate court is required to make an independent review of the record, giving no weight to the jury verdict, and to decide the case by a preponderance of the evidence without regard to the improper evidence. McLean v. Hunter, 495 So.2d 1298, 1304 (La.1986). Because we find the admission of the privileged letter to be a consequential error, we have reviewed the record to make an independent determination of quantum.
We find that the amount awarded by the jury ($285,000) is insufficient to compensate plaintiff for the fact that she will never be able to engage in a normal practice of law as a result of this accident. The accident caused severe abdominal injuries requiring immediate surgery. Plaintiff suffered a fractured shoulder, which, according to expert testimony is now 75 to 80% abnormal. She is in constant pain and is undergoing physical therapy several times per week. She is also on numerous medications. She has incurred over $65,000 in medical expenses as a result of this accident. Plaintiff's back, which was causing her problems before the accident, is now so bad that she cannot sit down for even a few minutes without being in what she described as "excruciating" pain. A medical expert testified that plaintiff was totally disabled from working as an attorney. Plaintiff cannot sit, drive, lift anything or bend over without pain.
*1130 We recognize that plaintiff did not perform a significant amount of work as an attorney between the 1983 accident and the 1986 accident. Because of this fact, we disagree with the trial judge's opinion that Ms. Pitard's damages amounted to $600,000. We find this figure to be too high in view of the fact that, just prior to this accident, plaintiff's activity in the legal field mainly consisted of telephone calls. Nevertheless, she was able to do some work, however limited, and the preponderance of the evidence shows that she was improving physically. She was also taking some college classes at that time. Since the June 4, 1986 accident, however, plaintiff has not been able to do anything productive.
In Louisiana, it makes no difference whether an accident has caused or has only aggravated the plaintiff's condition, because the defendant must take him as he finds him. Willie v. Barriere Constr. Co., Inc., 506 So.2d 669, 674 (La.App. 5th Cir. 1987), writ denied, 512 So.2d 457 (La.1987). Ms. Pitard's former employer, Mr. DeBoisblanc, testified that he would have paid plaintiff a starting salary of $30,000 to $32,000 annually had she been able to work as an attorney. Therefore, considering all the evidence, including future lost wages, we find plaintiff's damages to be in the amount of $400,000.
Accordingly, we amend the trial court's judgment to award plaintiff total damages in the amount of $400,000. In all other respects, the judgment is affirmed.
AMENDED & AFFIRMED.
SCHOTT, C.J., and WARD, J., dissent.
SCHOTT, Chief Judge, dissenting:
Assuming the trial court erred in allowing defense counsel to use during cross examination of plaintiff her letter to her attorney I am not convinced this contributed to the jury verdict in any way. I am particularly not convinced the letter had any influence on the jury's award for loss of earnings or earning capacity.
This plaintiff was already disabled to a significant degree before the accident sued on. For 1986 until the date of the accident on June 4 she earned only $763.00 as a lawyer; in 1985 she earned only $694.00; and in 1984, only $791.00. With all due respect to my colleagues in the majority their recognition that she didn't perform "a significant amount of work as an attorney between the 1983 accident and the 1986 accident" is an understatement. The fact is that she did and was physically able to do almost nothing in the way of legal work because of injuries sustained in the 1983 accident.
Inherent in the jury verdict is the finding that plaintiff had already suffered a substantial loss of earnings from the previous accident. Whatever amount the jury included in the present verdict of $285,000 for this element of damages was not an abuse of discretion. The judgment should be affirmed.
WARD, Judge, dissenting.
I respectfully dissent. Ms. Andree Pitard has been injured in several accidents for which she has received medical treatment since 1983. This is a claim for damages sustained in her latest accident. Stillwater Transfer concedes liability. The critical issue in this case is quantum of damages.
Yet this is not a question of whether the jury has abused its discretion in the award of damages. The question here is whether there was trial error which led to a verdict that is wrong, one that is entitled to no weight whatsoever, one that would require this court to render an independent verdict.
The error the majority finds so crucial is the use by opposing counsel of Ms. Pitard's letter to her attorney listing her medical expenses and allocating those expenses between the several accidents and between the two lawsuits. Unlike the majority I do not believe the trial court erred by permitting opposing counsel to use Ms. Pitard's letter to cross-examine her. As a consequence, unlike the majority, I do not believe a trial error vitiated the jury verdict.
The facts are straight forward and uncontested as to this issue. The first accident *1131 occurred June 27, 1983, the second on June 4, 1986. This resulted in two lawsuits, and Ms. Pitard retained the same counsel for both. The first suit was filed in Jefferson Parish, the second in Orleans Parish. Ms. Pitard, herself an attorney, aided her counsel in the preparation of the second lawsuit. After suit was filed in Orleans Parish, but before the filing of any motions for discovery, Ms. Pitard sent a letter to her attorney listing her medical expenses for doctor bills, therapy, medicine, and other attendant costs. In the letter Ms. Pitard distinguished between the expenses related to the first accident as opposed to the second one. She also designated some expenses as attributable to both. In her letter she says:
"... Please be advised that I have included Dr. Russo's office visits and Metairie Physical Therapy after the June 4, 1986, accident since they are directly related to both the June 27, 1983 accident and the June 4, 1986, accident...".
Ms. Pitard's letter was inadvertently included with other documents and sent by her attorney to opposing counsel in response to interrogatories.
When Ms. Pitard testified, opposing counsel believed her testimony was inconsistent with her letter, and he used it in cross-examining her, to show that she was attributing the same expense to both the first and second injuries. If the majority opinion is correct, an opinion which holds that the jury verdict was skewed by permitting counsel to use Ms. Pitard's letter to show inconsistencies, then the jurors must also have believed Ms. Pitard's trial testimony was inconsistent with her letter. If the jury did not, then it would not have affected their verdict. As a matter of fact the trial transcript does indeed indicate that Ms. Pitard attributed the medical expenses of Dr. Russo and the Metairie Physical Therapy wholly to the second accident, even though Dr. Russo had started treatment and therapy had commenced before the second accident.
Turning now to the question of privilege, I do not believe a privilege ever existed because Ms. Pitard's letter was not a confidential communication seeking advice or legal assistance. Ms. Pitard, as a practicing attorney, knew that after filing a lawsuit interrogatories would follow, requesting proof of medical expenses; she knew that she and her counsel would be required to respond; she also knew that she would have to prove what expenses were attributable to the second accident. The very nature of the letter shows that Ms. Pitard anticipates its contents will be divulged to answer interrogatories.
If Ms. Pitard meant for the contents to be confidential so as to avoid truthful answers, hiding the truth, then this anticipates fraud, and the attorney client privilege does not protect communications "where the desired advice refers not to prior wrongdoing, but to future wrongdoing." In re Murphy, 560 F.2d 326, 337 (8th Cir.1977).
United States Court decisions are pertinent. "Louisiana's attorney-client privilege is similar to that in most states." Pugh and McCleland, Evidence, The Work of the Louisiana Appellate Court, 1975-1976 Term, 37 La.L.Rev. 575 (1977). Louisiana courts frequently cite common law authorities in discussing the privilege. Succession of Norton, 351 So.2d 107 (La.1977).
The attorney-client privilege has such an effect on the full disclosure of the truth that it must be narrowly construed. Radiant Burners, Inc. v. American Gas Association, 320 F.2d 314, 323 (7th Cir.1963). A party seeking to assert the attorney-client privilege has the burden of proving that the privilege is applicable. This contemplates that the privilege must be asserted before disclosure, not afterward.
More importantly, where as in this case, a party voluntarily produces allegedly "privileged" communications in response to discovery, the privilege is waived. International Digital Systems Corp. v. Digital Equipment Corp., 120 F.R.D. 445, 449-50 (D.Mass.1988) Thomas v. Pansy Ellen Products, Inc., 672 F.Supp. 237, 243-244 (W.D.N.C.1987)
Voluntary production, even where inadvertent, is a waiver of privilege. In re Consolidated Litigation Concerning International *1132 Harvester's Disposition of Wisconsin Steel, 666 F.Supp. 1148, 1154-55 (N.D.Ill.1987). And similarly, "ordinarily a party that allows free access to its files cannot later claim that some of the documents they contained were privileged." New Orleans Saints v. Griesedieck, 612 F.Supp. 59, 63 (E.D.La.1985) aff'd, 790 F.2d 1249 (5th Cir.1986). "Once the document was produced for inspection, it entered the public domain. Its confidentiality was breached thereby destroying the basis for the continued existence of the privilege." Underwater Storage, Inc., v. United States Rubber Co., 314 F.Supp. 546, 549 (D.D.C.1970).
International Digital Sys. Corp., supra, provides the strongest, most persuasive statement:
It cannot be doubted that the confidentiality of the document has been destroyed by the `inadvertent' disclosure no less than if the disclosure had been purposeful; it equally cannot be doubted that the confidentiality of the communication can never be restored, regardless of whether the disclosure was "inadvertent" or purposeful. In other words, regardless of how painstaking the precautions, there is no order I can enter which erases from defendant's counsel's knowledge what has been disclosed. There is no order which can remedy what has occurred, * * * ".
Finally, if there ever was a privilege, and if the privilege was not waived by inadvertent disclosure, it should give way in this case because it would further the goal of truthseeking. This principal of truthseeking permits the prosecution in a criminal case to use illegally seized evidence to impeach a defendant's testimony, to prevent a defendant from perverting the exclusionary rule "into a license to use perjury by way of a defense". United States v. Havens, 446 U.S. 620, 626, 100 S.Ct. 1912, 1916, 64 L.Ed.2d 559. Even as to confessions, in furtherance of this principal of truthseeking, prosecutors may use otherwise inadmissible, incriminating statements to impeach the testimony of a defendant. Harris v. New York, 401 U.S. 222, 225, 91 S.Ct. 643, 645-46, 28 L.Ed.2d 1 (1971). Certainly if Fourth and Fifth Amendment privileges give way to truthseeking, then the attorney-client privilege should likewise, and the communication even if confidential was admissible for impeachment purposes.
Once the truth is out we should not try to stuff it back in the evidence bag.