### No. 9689.

### J. E. BOURKE, ADM., ET. AL. VS. JOSEPH M. WILSON AND EUGENIA WILSON.

To constitute a presentation of a will in the sense of the Code it is not necessary that it shall be delivered to the witnesses by the testator with his own hand, and no particular words or set form of speech is necessary to constitute a declaration that the instrument is the testator's will.

It is sufficient if the will, having been written by another at the request of the testator and out of the presence of the witnesses, shall have been read aloud by one of the witnesses in the presence and hearing of the testator and of the other witnesses, and is then held towards the testator by the writer of it who asks. "Is this paper that has just been read your will?" and the testator answers, "It is," and it is then signed by the testator and is attested by the witnesses in his and their presence.

The object of the law is to guard against a false instrument being exhibited instead of the true will, and that object is accomplished by the formalities above recited.

The circumstance that the writer of the will read it aloud a second time after the witness had so read it is not an interruption or turning aside to other acts.

Where only some of the heirs contest, it is not good ground of exception that all are not joined for *non constat* that the others wish to contest.

APPEAL from the Ninth District Court, Parish of Concordia. *Young,* J.

*J. N. Luce,* for Plaintiffs and Appellees.

*Dagg & Mason,* for Defendants and Appellants.

The opinion of the Court was delivered by

MANNING, J. This case involves the validity of a will.

Hughes Wilson died in October, 1884, without any but collateral heirs and bequeathed the bulk of his property to Eugenia Wilson, one of the defendants. The plaintiffs are the administrator and some of the heirs of the deceased. Hughes Wilson and the other defendant J. M. Wilson were planting-partners in the cultivation of a place called Moro, and J. M. Wilson is also the husband of Eugenia.

Pending the application for probate of the will, the plaintiffs brought this suit to recover the property left by the deceased, alleging that the defendants have illegally taken possession of it. The probate proceeding was consolidated with this suit and the lower court annulled the will.

The will is nuncupative under private signature and the objections to its validity are that there was no presentation and declaration of it as a will—that the affirmative answer of the testator to the question whether it was his will is not such presentation and declaration as the Code requires—that if such answer can be deemed equivalent to a presentation and declaration, it can only be so when the question is asked by one of the witnesses after the will has been read aloud by him in the presence of the others and of the testator—that the reading of the will by the writer of it after one of the witnesses had read it was an interruption and "turning aside to other acts"—that the testator did not cause the will to be written as the Code prescribes.

The will was written by Nathan M. Calhoun an attorney-at-law at the request of the testator who told him the disposition he desired to make of his property.

All the witnesses to the will and the writer of it concur in their statement of the circumstances of its writing, reading, etc., which are these:

Mr. Calhoun wrote the will in the bed-room where the sick man was lying. Just as he was finishing it the five witnesses entered the room. After they were seated Mr. Calhoun handed the paper writing to Z. W. Holmes, one of them, and requested him to read it, and he read it aloud in the presence and hearing of the testator and of the other witnesses. Calhoun then took it from Z. W. Holmes and read it himself aloud and in the presence and hearing of the testator and of all the witnesses. The room was small about 16x18 feet in size. Calhoun then went to the bedside of the testator and held up the paper to him and asked, " Is this your will that Mr. Holmes has just read ?" and he answered " It is." Calhoun then handed the paper to the testator and he signed it in the presence of the witnesses, all of whom immediately signed their names in the presence of the testator and of each other.

We do not perceive in what particular there was a failure to comply with the requirements of the Code for this kind of testament, which are that it will suffice if in the presence of five witnesses the testator presents the paper on which he has written his testament or caused it to be written out of their presence, declaring to them that that paper contains his last will. Rev. Civ. Code, Art. 1581.

To constitute a presentation of the will in the sense of the Code it is not necessary that it shall be delivered to the witnesses by the testator with his own hand, and no particular words or set form of speech is necessary to constitute a declaration that the instrument is the testator's will. The will was written by the request of the testator after he had given the scribe directions of the dispositions he wished to make, and was immediately twice read aloud by two different persons, one of them a witness, in the presence of the testator and the witnesses. The testator's affirmative answer to the question whether it was his will is as complete a declaration as if he had held the paper aloft and asserted that it was his will. The object of the law is to guard against a false instrument being exhibited instead of the real will, and that object is accomplished when the testator, having heard the will read before all the witnesses, indicates by his response to a question that it is his will. Bouthemy v. Dreux, 12 Mart. 639; Falkner v. Friend, 1 Rob. 48.

The circumstance that the writer of the will read it aloud after the witness had read it is not an interruption or turning aside to other acts.

The caveators rely confidently on McCaleb v. Douglass, 16 Ann. 327, and the digest of that decision by the reporter certainly sustains them. That case has been commented on in Buntin v. Johnson, 28 Ann. 796, and Wood v. Roane, 35 Ann. 865, where it was said the facts in that case do not shew a presentation. However that may be, the decisions in the Bouthemy and Falkner cases already cited amply justify our ruling in the case at bar.

Other questions are presented in the record which need not be noticed because they concern the ownership of the property in the event of the annullment of the will.

Exception was made to the capacity of the administrator to claim the nullity of the will which seems not to have been pressed. Some of the heirs joined him and exception was made that all of them should have joined him. It is presumable that the non-joiners did not wish to contest and those that did are not deprived of the right to do it because others would not contest.

It is ordered and decreed that the judgment of the lower court is avoided and reversed, and that the instrument presented for probate as the last will of Hughes Wilson is hereby declared to be valid in form and is entitled to be probated and executed. It is further decreed that the plaintiffs' demand is rejected and that the defendants have judgment against them for their costs in both courts.