25 So.2d 296

Succession of FERTEL.

Nos. 37771, 38040.

Feb. 11, 1946.

Benjamin M. Goodman, of New Orleans, for plaintiff and appellant.

Albert B. Koorie, M. C. Scharff, E. R. Schowalter, Williams & Wolfson, and Leon S. Cahn, all of New Orleans, for defendants and appellees.

KENNON, Justice.

The opponent herein, Mrs. Annie Fertel Buhberg, who, according to the terms of the mystic will of her deceased father, Sam Fertel, received one-third of his estate, after the deduction of the disposable portion, filed proceedings asking that the will be declared void for the reason that the envelope containing it was not closed and sealed, as required by law; and that Article 1584 of the Revised Civil Code was not complied with, in that the act of superscription recites that the will, closed and sealed, was presented "* * * to the Notary *in the presence* of the three witnesses" instead of "* * * to the Notary and *to the three witnesses*". In the alternative, she asked that there be judgment decreeing the bequests of the disposable portion null and void; and, in the further alternative, she prayed that her legacy be computed by adding to the value of the estate all sums advanced by the testator during his lifetime to his children and grandchildren, including the amount— later conceded to be $212,286.38—paid by him to settle the tax liability of the opponent and the other heirs to the estate of Mrs. Julia Deiches Fertel, his deceased wife.

The testator's grandchildren, particular legatees under the will, filed an exception of no cause of action, which was maintained. A suspensive appeal from that judgment was granted to this Court and it

is No. 37,771 of the cases consolidated here for hearing. Before the trial below on the merits, a similar exception of the other particular legatees was sustained. There is no evidence in the record of an appeal from that judgment.

After the trial of the case, judgment was rendered by the lower court, decreeing the will valid, recognizing the bequests of the disposable portion as legal, and dismissing the opponent's suit at her costs. From this judgment she appealed, which proceeding is No, 38,040 of the consolidated cases.

In this Court, the plaintiff has urged, as grounds of nullity, that the envelope containing the will was not closed and sealed, as required by law; and that the superscription recited that the will was presented *in the presence of* instead of *to* the witnesses.

We will discuss first the contention that the will was not closed and sealed as required by law.

Counsel for the opponent contend, ably and strenuously, that the words "closed and sealed", as used in Article 1584 of the Revised Civil Code, require more than was done in this case, and quote an interesting array of French and Roman authorities for the proposition that "the seal" should include an impression by means of a signet ring or other device, upon sealing wax or the like.

The question presented herein has been previously raised in this Court, particularly in Hart v. Thompson's Executor and Legatees, 15 La. 88, and Saint v. Charity Hospital, 48 La.Ann. 236, 19 So. 275. In the Hart case, the Supreme Court, in refusing to follow the French authorities, which called for the impress of a device on the seal, held:

" * * * The Louisiana Code, article 1577, does not prescribe how and in what way mystic wills are to be sealed, nor does article 1644, which treats of the probate of such instruments, say a word about the necessity of a seal appearing to have been affixed. It requires only proof of the signatures of the witnesses to the act of superscription, and their declaration that they recognize the sealed packet presented to them as the same one handed to the notary by the testator as containing his last will. Usage, no doubt, went a great way in France in determining the meaning of the words used in article 976, of the Napoleon Code. The provision itself was taken from the ordinance of 1735, which prescribed that mystic wills should be closed and sealed 'avec les précautions en tel cas requises et accoutumés.' In that country, the use of seals was formerly as general as it is unusual in ours. The danger of the will being changed or altered, is given by the writers as the reason why the impression of a stamp is required. It is said to be a necessary precaution against the fraudulent opening of the envelope. This reason is far from being conclusive. The law has not determined what that seal or impress should be. It has not provided that the seal used shall be described ne varietur in the act of superscription. If, then, no particular seal is mentioned in that act, what protection or security does a seal

afford, which can be broken open and replaced by any other seal. This omission of the lawgiver, to explain what was the sealing in his contemplation, authorizes us, we apprehend, to take the word in its ordinary acceptation, and as understood by the community generally. Louisiana Code, article 14. Webster's Dictionary informs us that fastening with wafers is sealing, and common usage, not only in Louisiana, but throughout the United States, sanctions that use of the word. *It is only necessary, then, to examine whether the packet has been carefully closed and sealed, and whether it has, in reality, remained untouched."* (Italics ours.)

The French authorities were again discussed by this Court in Saint v. Charity Hospital, supra, and that opinion contains the following language [48 La.Ann. 236, 19 So. 276]: " * * * Indeed, the French commentators hold that the provisions of the Code on this subject are designed to guide the courts in admitting to probate mystic wills, and enjoin that the envelope, when presented, according substantially with the closing and sealing required, shall present no evidence of having been opened. [2 VaZeille], p. 477. In the light of these authorities our supreme court held that a will closed with wafers, with no seal, was valid. Hart v. Thompson's Executor, 15 La. 88."

■ In this case, the envelope was closed and sealed with the mucilage on the flap— as is ordinarily used in the transmission of first-class mail—and a sealing wafer—two and a quarter inches in diameter was securely attached, reinforcing the sealed flap. A careful examination of the envelope discloses that it was not in any way tampered with or opened—except where the top edge was cut open with a sharp instrument— when presented for probate. There is no allegation or evidence in the record that the envelope had been tampered with or opened, nor is it alleged that the document contained therein was not the will of the testator. Therefore, we conclude that the requirements of Article 1584 were sufficiently complied with in this case.

The second ground of attack on the validity of the will is directed at the recital in the .act of superscription that the testator presented the envelope closed and sealed to the Notary *"in the presence of"* the witnesses, rather than "to the Notary *and to the three witnesses"*.

Article 1651 of the Revised Civil Code provides: "The declaration of the witnesses required for the proof of mystic testaments, must state in substance that they recognize the sealed packet presented to them to be the same that the testator *delivered to the notary in their presence,* declaring to him that it contained his testament; and also that they recognize their signatures and that of the notary at the foot of the act of superscription, if they have signed it, or the signature of him who signed for them respectively, if, not knowing how to write, they did not themselves sign the act of superscription." (Italics ours.)

It is obvious that the superscription on the envelope indicates a substantial com-

pliance with the provisions of the Articles of the Code. It recites, in addition to the fact that the testator presented the envelope *closed* and *sealed* to the Notary in the presence of the witnesses, that: "* * * the said testator (and) *the said witnesses, * * * have signed this act of superscription * * ** all done without interruption or turning aside to other acts", and the signature of the testator and the witnesses appear on the envelope above the signature of the Notary. The witnesses, in signing the act of superscription, had the opportunity to handle and examine the packet.

▆ This Court has held that an actual manual presentation is not sacramental. We quote from Falkner v. Friend, 1 Rob. 48: "* * * It does not clearly appear from the procés verbal of the probate of this will that the testator presented it to the witnesses and declared it to be his; but we have held in the case of Bouthemy v. Dreux et al., 12 Mart., O.S. [639], 645, that the presentation of the will need not be manual, and that the law is complied with if after the instrument has been read to the testator in the presence of the witnesses he declares to them, as the evidence shows was done in this case, that it contains his last will and testament."

▆ In Falkner v. Friend, supra, and the Bouthemy v. Dreux case therein cited, nuncupative wills under private signature, rather than mystic wills, were involved, but, in both instances their presentation was called for, and we hold here that the presentation to the Notary in the presence of the witnesses—who viewed the presentation and the making of the superscription, and participated by signing same—fulfilled the necessary requirements of Article 1584 of the Revised Civil Code. See, also, Bourke v. Wilson, 38 La.Ann. 320.

Since the will is valid, we will now consider the alternative claims. The first, that the bequests of the disposable portion be declared void, was not urged in brief nor argument and we know of no reason why these bequests are not valid. The second alternative demand is that in computing the one-third interest in the two-thirds of the estate willed to the opponent, there should be added fictitiously to the decedent's estate the donations made by him inter vivos, and that she should not be obliged to attribute to her legitime those donations inter vivos of which she was the beneficiary.

There seems to be no dispute as to the facts. The bulk of the disposable portion was willed to opponent's brother and sister, and the remainder of the estate was given to the three children of the testator (the opponent and her brother and sister) by the following language of the will:

"The remainder of the disposable portion of my estate, after the payment therefrom of the above particular legacies, I leave and bequeath to my son Barney Fertel, and to my daughter, Nettie Fertel Warren in the proportion of three-fifths of the remainder of said disposable portion to my said son and two-fifths of the remainder of said disposable portion to my said daughter, as advantages and extra portions to them, by reason of the reduc-

tions of their shares in my late wife's estate occasioned by her will.

"The rest and residue of my estate, that is to say, the remaining two-thirds thereof, I leave and bequeath in equal proportions to my three children, Nettie Fertel Warren, Annie Fertel Buhberg, and Barney Fertel."

For the purpose of settling the liabilities of his deceased wife's estate, including the inheritance and estate taxes thereon, Sam Fertel, prior to his death, had advanced, out of his share of the community, and out of his separate funds, acquired after the dissolution of the community, the sum of $212,286.38.

By judgment of this Court in the succession of her mother (Mrs. Julia Deiches Fertel), the opponent herein was decreed to be the owner of a 7/27 interest therein, and, consequently, she was the beneficiary of 7/27 of the donations inter vivos of $212,286.38, to the extent of $55,037.21.

As a defense against being held accountable for this amount, the opponent claims the benefit of the following provision in the will: "It is my will that none of my children shall be required to collate or account for any amounts that I may have given to or advanced for them during my lifetime, including in such prohibition against collation such amounts as I shall have paid for their account to settle the liabilities of their mother's succession and the State and Federal Inheritance and Estate Taxes thereon. It is also my will that, in calculating the values of my estate and the portion thereof, there not be taken into consideration any amounts that I shall have paid, during my lifetime, to or for account of, any of my grandchildren."

If opponent were claiming her legitime instead of her legacy under the will, Article 1505 of the Revised Civil Code would apply. This article lays down the rule for calculating the disposable portion of an estate, as follows: " * * * an aggregate is formed of all the property belonging to the donor or testator at the time of his decease; to that is fictitiously added the property disposed of by donation inter vivos * * * " and from the sum total, the debts of the succession are deducted, and upon the remainder is computed the fraction which represents the disposable portion of the estate, according to the number of forced heirs and their relation to the deceased. But, the opponent herein does not contend that the effect of the dispositions of the will, as interpreted by the lower court, is to impinge upon her legitime—including in the estate the donations inter vivos in accordance with the above article of the Civil Code. This is demonstrated by the district court's calculations, as shown below:

"Inventory, Succession of
Sam Fertel ............ $ 999,193.84
Donation inter vivos to
Barney Fertel ........ 3,139.10
Donation inter vivos to
Bluma Fertel ......... 5,000.00
—Mrs. Julia Deiches Fertel— .................. 212,286.38

| | |
|---|---:|
| Aggregate of estate (R.C. C. art. 1505)........... | 1,219,619.32 |
| Disposable portion (1/3).. | 406,539.77 |
| Legitime (2/3rds) ....... | 813,079.54 |
| Mrs. Buhberg's share of legitime (1/3) ......... | 271,026.51 |
| Amount received by Mrs. Buhberg: | |
| Inventory Succession of Sam Fertel ............ | 999,193.84 |
| Disposable portion, per will (1/3) ............. | 333,064.61 |
| Residuary estate, or legitime (2/3) ............. | 666,129.33 |
| One-third to Mrs. Buhberg, per will.......... | 222,043.07 |
| 7/27ths advances for account Succession of Mrs. Julia Deiches Fertel per share therein under Supreme Court decision 7/27 of $212,286.38..... | 55,037.21 |
| Total received by Mrs. Buhberg .......... | $ 277,089.28." |

A reading of the will as a whole, including the paragraph above quoted, brings us to the conclusion, as it did the district judge, that the testator did not intend that the donations inter vivos made by him be computed in determining the disposable portion of "the remaining two-thirds" of his estate, which he bequeathed in equal proportions to his three children, including the opponent herein.

The opponent cannot successfully contend that the provisions of the will be disregarded in the computation of her legitime and at the same time demand that she receive the benefit of that clause of the will relieving her from collation of the above donation of $55,037.21.

The law applicable to such dual inconsistent demands was discussed in the Succession of Turnell, 32 La.Ann. 1218, in which this Court stated: "We think it clear, on both reason and authority, that where the will bequeaths to the forced heir more than his legitimate portion, the testator may attach to the bequest any lawful conditions, and in such case the forced heir must exercise the option of either accepting the bequest as a whole, with the conditions attached, or of renouncing all testamentary advantage, and claiming his légitime only as secured to him by the law independent of the testament."

The opponent did not sue for the recognition of her legitime, in lieu of receiving the benefits under the will. Her alternative prayer, in the event the will and the bequests therein of the disposable portion were declared valid, was that her share be computed as above set forth, rather than as provided in the will. The district court correctly rejected this alternative demand.

For the reasons assigned, the judgment of the district court in each of the above cases—No. 37,771 and No. 38,040—is affirmed.

All costs of these proceedings, including both appeals, to be borne by the estate of Sam Fertel.

O'NIELL, C. J., and HAWTHORNE, J., take no part.