365 So.2d 507 (1978)
Succession of Martha Louise Hunter PIERSON, (Pattie Hunter Pierson).
No. 6671.
Court of Appeal of Louisiana, Third Circuit.
November 15, 1978.
Writs Refused January 19, 1979.
*508 Pharis & Pharis, F. Jean Pharis, Alexandria, for Louise P. Marshal, et al.
Mansour & Davis, Alfred A. Mansour, Alexandria, for Louise Pierson Marshal.
Bolen, Halcomb & Erwin, James A. Bolen, Jr., Alexandria, for Diane P. Whaley.
Lewis O. Lauve, Alexandria, for David Pierson.
Gravel, Roy & Burnes, Stephen E. Everett, Alexandria, for Succession of Martha Louise Hunter Pierson et al.
Gist, Methvin & Trimble, John W. Munsterman, Alexandria, for Sec. Nat. Bank.
Provosty & Sadler, Richard E. Chaudoir, Alexandria, for Guaranty Bank.
Before CULPEPPER, DOMENGEAUX and WATSON, JJ.
DOMENGEAUX, Judge.
This matter is before us after trial on remand. In the first appeal, we decided various issues of collation between the forced heirs of decedent, Martha Louise Hunter Pierson, and remanded the case to the District Court for a determination of the reductions due in this succession. Succession of Pierson, 339 So.2d 1337 (La.App. 3rd Cir. 1976), writs denied 342 So.2d 216-217 (La.1977). After remand, the dative testamentary executor filed a petition for payment of charges, final accounting, and distribution of property, which was opposed by all heirs or their representatives. The trial judge rendered judgment dismissing all oppositions, authorizing the payment of charges, approving the final account of the executor, fixing the amount of inheritance taxes, and authorizing the executor to pay the heirs and legatees the proposed distribution.[1] All heirs or their representatives appeal.
The facts necessary to an understanding of this appeal are set forth as follows. Mrs. Martha Louise Hunter Pierson, a widow, died in February, 1971, leaving four heirs: two sons, Robert Hunter Pierson and David Pierson; one daughter, Mrs. Louise Pierson Marshal; and a granddaughter, Mrs. Diane Pierson Whaley, the daughter of a predeceased son, Clarence Pierson, Jr. After her death one of the sons, Robert Hunter Pierson, died, and his daughter, Ann Pierson Patton, came into the succession proceedings as his dative testamentary executrix.
Mrs. Pierson left a testament which provided that the disposable portion of her estate was to go to Robert Hunter Pierson as an extra portion. There were also several comparatively small particular legacies *509 made in the testament. The testament named Robert Hunter Pierson as executor, and he was so appointed by the Court. Subsequently, he was relieved of these duties, and the Court appointed Security National Bank in Alexandria, Louisiana, as executor.
Several donations inter vivos were made over a period of years to all four children by Mrs. Pierson. We discussed these in detail in our previous opinion. For this appeal, it is only necessary to state that the four heirs had to collate the following amounts: Robert Hunter Pierson, $22,340.00; Diane Pierson Whaley, $21,184.80; Louise Pierson Marshal, $16,015.48; and David Pierson, $21,537.50.
After the sale of immovable property in the succession and the distribution of the particular legacies in the will, the executor possessed $189,321.62 of liquid succession assets. There were also some old coins in the estate with a face value of $10.25. Thus, the total value of succession property held by the executor was $189,331.87.
The executor made disbursements for succession debts during the administration of the succession totalling $50,105.91. Additional charges due from the succession were as follows: $5,000.00 for executor's fees; $12,106.00 for attorney's fees and costs; $2,000.00 for Clerk of Court's fees; $2,061.23 for the transfer and storage of succession property; and $485.00 for remaining income tax liability. Thus, the amount of money on hand available for distribution was $117,573.73. The following table of accounts is illustrative:

Succession funds received by Executor after
deducting $10,068.75, the value of
particular legacies ......................................$189,321.62
Cash in currency .............................................$ 10.25
 ___________
 Total .........................$189,331.87
LESS:
Disbursements made during administration ......$50,105.91
Executor's fees ............................... 5,000.00
Attorney's fees and costs ..................... 12,106.00
Clerk of Court's fees ......................... 2,000.00
Transfer and storage of succession property ... 2,061.23
Income taxes ..................................... 485.00
 __________
 Total .................$71,758.14
Funds on Hand Available for Distribution .....................$117,573.73

Not included in the above table is the value of claims against the first executor, Robert Hunter Pierson, which the executor determined had a value of $2,807.89 and, as previously stated, the value of particular legacies made in the will, which was $10,068.75. These amounts, however, were used in considering the final distribution of the property.
The executor proposed to distribute the property as follows: The active mass was computed by taking the amount of succession assets, subtracting succession liabilities, and then adding the donations inter vivos to the remainder.
Succession assets consisted of the $189,321.62 in liquid funds received by the executor, the $10,068.75 for particular legacies already distributed, the $2,807.89 for the claims against the succession of the first executor, Robert Hunter Pierson, and the $10.25 in currency. Succession liabilities consisted of those amounts paid and to be paid by the executor, as previously mentioned. The sum used for the donations inter vivos was the total of the amount which we previously determined had to be collated by the heirs. The following table of accounts is illustrative:

*510
SUCCESSION ASSETS
 Succession Funds Received by Executor .........................$189,321.62
 Value of Particular Legacies................................... 10,068.75
 Value of Claims against Succession of
 Robert Hunter Pierson..................................... 2,807.89
 Currency on Hand .............................................. 10.25
 ___________
 Total ................................$202,208.51
SUCCESSION LIABILITIES
 Disbursements made during administration ..........$50,105.91
 Transfer and Storage Fee .......................... 2,061.23
 Clerk of Court Fees ............................... 2,000.00
 Attorney's Fees ................................... 12,106.00
 Executor's Fees ................................... 5,000.00
 Income Tax Liability .............................. 485.00
 __________
 Total ..........................$71,758.14 ___________
NET SUCCESSION PROPERTY ...........................................$130,450.37
AMOUNT OF DONATIONS INTER VIVOS ...................................$ 81,077.78
 ===========
ACTIVE MASS .......................................................$211,528.15

Since there were four branches of forced heirs, the executor determined that the disposable quantum of the succession was $70,509.38 (1/3 × $211,528.15); and that the legitime was $141,018.77 (2/3 × $211,528.15).
The executor computed the amount each heir would get by offsetting his forced portion by the amount collated and the value of particular legacies, if any, bequeathed to the heir. For Robert Hunter Pierson, additional offsetting amounts were used, these being the particular legacies made to legatees other than forced heirs, and the value of claims against his succession while the succession of his mother was under his administration. It should be noted that Robert Hunter Pierson's executrix, Ann Pierson Patton, does not dispute these amounts.
Thus, the executor reached the following conclusions:
I. TO ANN PIERSON PATTON, AS THE DATIVE TESTAMENTARY EXECUTRIX OF THE SUCCESSION OF ROBERT HUNTER PIERSON.

Share of Legitime (frac14; × 2/3 × $211,528.15)............$35,254.69
LESS:
Donations Inter Vivos (collated) ...............$22,340.00 ==========
DISTRIBUTION DUE ROBERT HUNTER PIERSON AS FORCED
HEIR ........................................... $12,914.69
Disposable portion (¼ × $211,528.15) .........................$70,509.38
LESS:
Particular Legacy (not collated) ............... $ 5,913.00
Value of Claims against Succession of Robert
Hunter Pierson ................................... 2,807.89
Special legacies to legatees other than heirs .....2,895.00
 _________
 Total ..................$11,615.89 ==========
DISTRIBUTION DUE ROBERT HUNTER PIERSON AS LEGATEE $58,893.49
TOTAL DISTRIBUTION DUE ROBERT HUNTER PIERSON AS
FORCED HEIR AND LEGATEE .............................................. $71,808.18

*511
II. TO DIANE PIERSON WHALEY.
Share of Legitime (¼ × 2/3 × $211,528.15)...........$35,254.69
LESS:
Donations inter vivos (collated)................$21,184.80 ----------
TOTAL DISTRIBUTION DUE DIANE PIERSON WHALEY ...........................$14,069.89
 ==========
III. TO LOUISE PIERSON MARSHAL.
Share of Legitime (¼ × 2/3 × $211,528.15)...........$35,254.69
LESS:
Special legacy ............................... $ 210.00
Donations inter vivos (collated) .............. 16,015.48
 ___________
 $16, 225.48
TOTAL DISTRIBUTION DUE LOUISE PIERSON MARSHALL .........$19,029.21
IV. TO DAVID PIERSON.
Share of Legitime (¼ × 2/3 × $211,528.15) ..........$35,254.69
LESS:
Special legacy .................................$ 1,050.75
Donations inter vivos (collated) ............... 21,537.50
 __________
 $22,588.25 __________
TOTAL DISTRIBUTION DUE DAVID PIERSON ...............................$12,666.44
 ==========

This distribution of funds was approved by the trial court, and, after deductions were made for each heir for inheritance taxes, the aforementioned judgment was rendered.
As previously stated, all four heirs or their representatives opposed the proposed distribution of property, and they all appealed to this Court.
At the outset, we note that the bulk of argument presented on appeal deals with issues of collation previously discussed and resolved in our prior opinion. We consider these matters closed and decline the invitation to reopen them.
The only parties to present new issues on this appeal are David Pierson and Louise Pierson Marshal. These issues are:
(1) The appropriateness of the amount of attorney's fees and executor's fees allowed; and
(2) The distribution of one-third of the succession mass to the Succession of Robert Hunter Pierson, as an extra portion.

I.
The executor set its fees at $5,000.00 and allowed attorney's fees for its attorney of $12,000.00. These amounts were accepted by the trial court.
*512 Article 3351 of the Louisiana Code of Civil Procedure provides that the executor shall be allowed a sum of two and one-half percent of the amount of the inventory of the succession as compensation for services in administering the succession. The Article also provides that the Court may increase this amount if it is inadequate.
The total inventory of the succession was $144,847.00. The executor's fees exceeded the two and one-half percent of the inventoried value of the estate by $1,378.82. The question, therefore, is whether the usual compensation is adequate in this case.
This succession was opened on February 8, 1971. On December 3, 1971, Security National Bank was appointed dative testamentary executor, after Robert Hunter Pierson had withdrawn. The succession was fairly complicated. Numerous pleadings were filed by all the heirs and many succession debts had to be paid. In addition, the succession involved the sale of immovable property. Finally, there were fairly complicated issues involving the collation required by the heirs. Considering the amount of time that the succession was under administration and the complexity of the overall succession, we feel that the increase in the standard compensation allowed by Article 3351 is not erroneous.
We feel that the same considerations listed above are applicable to the amount of attorney's fees due the attorney of the executor. We feel that $12,000.00 was not unreasonable under the facts of this case. See, Succession of Gomez, 226 La. 1092, 78 So.2d 411 (1955) (inventoried value of succession, $270,000.00) (attorney's fee of $25,500.00 not erroneous).

II.
The second issue, concerning the distribution of one-third of the succession mass to the Succession of Robert Hunter Pierson as an extra portion, revolves around Article 1510 of the Louisiana Civil Code. That article, which is found in the chapter dealing with the reduction of excessive donations, provides:
"When the value of donations inter vivos exceeds or equals the disposable quantum, all dispositions mortis causa are without effect."
The amount of donations inter vivos in this case comes to $80,077.78, which was the precise amount that the heirs were required to collate. Since the succession mass came to $211,528.15, and since there were four branches of heirs, the disposable quantum would be $70,509.83 (1/3 × $211,528.15). C.C. Arts. 1493 and 1505. It is argued that the amount of donations inter vivos exceeds the disposable quantum and that, therefore, the legacy left to Robert Hunter Pierson should be without effect.
We feel that this argument misapplies Article 1510. Article 1510 states a basic and elementary proposition: If a decedent, during his lifetime, has already given away the maximum amount which the law permits him to give away, there is nothing left which can be disposed of freely after his death. The remainder of the property is reserved, by law, for the forced heirs. This is the legitime.
Article 1510 does not apply in this case because of the fact that the donations inter vivos were made exclusively in favor of the forced heirs, and were required to be collated by them. In other words, the donations inter vivos were actually intended to be advances on what the heirs could one day expect to receive from their inheritance. C.C. Arts. 1227 and 1229. Considered in this light, the donations inter vivos actually composed part of the legitime; that is, they should be credited to the legitime, and not to the disposable portion.
Under the facts presented here, each heir's forced portion is $35,254.69. However, when the appropriate offsets are made for the collated donations, each heir actually gets the following for his forced portion: $12,914.69 for Robert Hunter Pierson; $14,069.89 for Diane Pierson Whaley; $19,029.21 for Louise Pierson Marshal; and $12,666.44 for David Pierson. Thus, a total of $58,680.23 is due the forced heirs. This is the amount of the legitime which is still due from the succession. The succession had *513 net assets of $130,450.37, and the executor has $117,573.73 available for distribution. There is obviously more than ample funds on hand to satisfy the legitime, and, therefore, no reason to invalidate the dispositions mortis causa.
One of the conceptual difficulties involved in this case arises because the donations had to be collated by taking less, rather than in kind. When a collation is made in kind, the concept of donations returning to the succession, and, consequently, becoming a part of the legitime, is easier to perceive. If it is assumed, under the factual setting of this case, that all of the donations were collated in kind, the amount of property in the succession after collation would be $211,528.15 ($130,450.37 plus $81,077.78). This sum is identical to the active mass of the succession. It could not possibly be maintained in this hypothetical situation that the decedent disposed of her disposable portion, because the entire active mass, from which the disposable portion is calculated, would be contained in the succession.
We think it inconceivable that the Code contemplated different results concerning the legitime and disposable portion, depending upon whether the collation is made in kind, as in the hypothetical situation above, or by taking less, as actually happened in this case.[2] The situation, of course, would be different had these donations not been subject to collation, either because the donor exempted them specifically or because they were donated to persons other than forced heirs. In that event, the donations could not be considered advances on the inheritance. The legitime would be $141,018.76 (2/3 × $211,528.15); however, the succession would have assets of only $130,450.37. The amount of donations inter vivos would have exceeded the disposable portion. The legitime would have been impinged upon, and, obviously, there then could be no donations mortis causa. This is the situation to which Article 1510 speaks. Of course, since the legitime would have been impinged upon, the heirs could then have proceeded for a reduction.
We feel that to blindly apply Article 1510 to the facts of this case would be to disregard the codal scheme governing the collation of donations between the forced heirs and the reduction of excessive donations. The whole purpose beyond Article 1510, and the surrounding Articles, is simply to insure that the legitime is not impinged upon. There has been no impingement here.
For the above reasons the judgment of the District Court is affirmed. Costs on appeal are assessed equally to the four appellants.
AFFIRMED.
NOTES
[1] The bulk of the succession property consisted of cash because all immovable property had been previously disposed of by sale.
[2] This is not to say that the Code draws no distinction between collation in kind or collation by taking less. For example, a donee of immovable property who collates in kind does not bear the loss of the property if it is destroyed after collation, without his act or fault. C. C. Art. 1261. However, if the donee elects to collate by taking less, he bears the loss. C.C. Art. 1263. We do not feel, however, that this differing treatment is contemplated by the Code when it comes to calculating the legitime and disposable portion.