430 So.2d 734 (1983)
SUCCESSION OF Lois May Smith HENDRICK.
No. 15299-CA.
Court of Appeal of Louisiana, Second Circuit.
March 28, 1983.
Writ Denied June 3, 1983.
*735 Tucker, Jeter & Jackson by Robert McLean Jeter, Jr., Shreveport, for appellee, Florence Hendrick Wray.
Cook, Yancey, King & Galloway by Sidney E. Cook and William L. Murdock, Shreveport, for appellee, Dr. Robert S. Hendrick.
James A. Van Hook, Shreveport, for appellants, Dr. John Alexander Hendrick, Jr., and Mrs. May Virginia Hendrick Chidlow.
Smitherman, Lunn & Chastain by Merritt B. Chastain, Jr., Shreveport, for appellee, Louisiana Bank & Trust Co.
Before PRICE, JASPER E. JONES and NORRIS, JJ.
JASPER E. JONES, Judge.
In this succession proceeding two heirs, Florence Hendrick Wray and Dr. Robert Smith Hendrick, opposed a proposed Tableau of Distribution on grounds that the legacy in the decedent's will impinged on their legitime and that collation was due from another heir. The decedent's other children, May Hendrick Chidlow, the legatee, and Dr. John Hendrick, Jr., appeal a judgment declaring the legacy invalid, ordering collation by all heirs and directing that the estate of Lois May Smith Hendrick be divided equally among her four children. Robert Hendrick and Wray answered the appeal.
Chidlow and John Hendrick, Jr., referred to jointly as "the proponents," set out five *736 assignments of error.[1] Wray and Robert Hendrick, referred to jointly as "the opponents," set out two assignments of error.[2] These assignments raise the following fundamental issues:
1) is a dispensation from collation made in an olographic testament valid;
2) is the legacy in the decedent's will invalid under C.C. art. 1510 or because it impinges on the legitime; and
3) are the inter vivos donations by decedent to her grandchildren attributable to their parents for the purpose of determining whether collation is due.

The Facts
The facts were stipulated by the parties.
Lois May Smith Hendrick, the decedent, was born in 1889. She married Dr. John Alexander Hendrick in 1911. Four children were born of this marriage, John, Jr., in 1912, May in 1916, Florence in 1919 and Robert in 1923. These children survived decedent as her only forced heirs. Dr. John Hendrick, Sr., died in 1938.
Beginning in 1941 the decedent made a series of gifts to her children. Between 1941 and 1979 the decedent made equal gifts to each of her children with a total value of $1,308,958.27.[3]
In 1973 the decedent made gifts not included in the total above with a value of $503,024.00. These gifts were distributed ¼th to decedent's son, John Hendrick, Jr., ¼th to trusts for the children of her son, Robert, ¼th to the children of her daughter, Florence, and ¼th to the children of her daughter, May. The gifts were offered in equal portions to the decedent's children. While John, Jr., accepted, Robert, Florence and May had their mother give their respective portions to their children. This was the only occasion when the decedent did not make the gift to all of her children in equal portions.
On December 4, 1980, Lois May Smith Hendrick departed this life. At her death the decedent owned assets with a value of $710,721.71 including her home which had a value of $256,000. Decedent's debts were $56,425.14.
The decedent's olographic testament made only one disposition, a bequest of her home to her daughter, May Hendrick Chidlow. The testament also declares that the inter vivos gifts to her children and the bequest to May are extra portions for which they shall not be required to collate or account.[4]
*737 On October 14, 1981, Louisiana Bank and Trust Company, the provisional administrator of the succession, filed a Tableau of Distribution recognizing the legacy of the home to Chidlow and proposed to distribute it to Chidlow and proposed to distribute the remainder to all the heirs equally except for liquid assets which were to be retained by the bank "for the time being." The bank petitioned for authority to make the distributions. The opponents then filed their opposition to the tableau asserting that the legacy was invalid because it impinged on the legitime and, alternatively, demanding collation of inter vivos gifts received by the forced heirs.
The matter was submitted to the district court on the stipulated facts. The district judge determined that the active mass of the succession was $2,466,279 and he calculated the legitime and disposable portion as $1,644,186 and $822,093, respectively.[5]
The district judge found the testamentary dispensation from collation invalid and the inter vivos donations to decedent's children to be advances on the legitime. He found the legacy to Chidlow was not invalid under C.C. art. 1510 because the article was inapplicable.
The district judge then performed calculations to determine whether or not the heirs had received their legitime. In these calculations he valued movables given inter vivos as of the date of the gift under C.C. art. 1283. On that basis he concluded the heirs were entitled to an additional $825,826 to complete their legitime. As that amount is more than the succession assets left by decedent at death, the district judge declared the legacy invalid as an impingement on the legitime.
The district judge entered judgment declaring the legacy invalid and ordering the heirs to collate inter vivos donations to them or their children. This appeal followed. We reverse.

Issue # 1
Our first inquiry is whether the dispensation from collation in the decedent's olographic testament is valid. We conclude that it is not.
It is presumed that an inter vivos donation is subject to collation unless the donor provides to the contrary. C.C. arts. 1230,[6] 1231.[7] The donor may dispense with the requirement of collation in the instrument of donation or afterwards in an act passed before a notary and two witnesses. C.C. arts. 1232,[8] 1501.[9]
The decedent's olographic will was, of course, not made before a notary and two *738 witnesses. Thus, the attempt to dispense with collation was not made in the form required by the code.
However, the opponents cite Heirs of Barrow v. Barrow, 38 La.Ann. 645 (La. 1886), and Succession of Fertel, 209 La. 655, 25 So.2d 296 (1946), for the proposition that a donor may dispense with collation in a testament which does not meet the requirements of C.C. arts. 1232 and 1501. The cited cases do not support this position.
In Barrow the decedent left a will in the form of a nuncupative testament by private act. The will dispensed with collation by some children. The will was probated, its terms were carried out and the executor was discharged on June 24, 1878. Nearly eight years later certain heirs brought an action seeking, among other things, collation. This action was met with pleas of no cause of action, estoppel and prescription.
The Barrow court found the plea of estoppel to be well founded and wrote: "The will being thus protected from attack, its terms are sufficient to cut off any claim for collation ..." 38 La.Ann. 650. The basis of the Barrow decision was estoppel and the case is not authority for the independent validity of a dispensation from collation in nuncupative testament by private act.
In Succession of Fertel the court held that a legatee under a mystic will could not claim the benefit of a provision dispensing with collation and disregard other provisions. While Fertel might be read to imply the validity of the dispensation from collation that issue was not discussed. However, even assuming it should be read with that implication Fertel is of no avail to opponents because a mystic will, as involved there, requires a notary and three witnesses, see C.C. art. 1584, and would on the surface at least appear to comply with C.C. arts. 1232 and 1501.
It is also significant that the code contains article 1233[10] to somewhat relax the requirements of articles 1230 and 1231 with respect to the language of the dispensation but contains no similar article to relax the requirements of form for the dispensation from collation established by article 1232.
The testator's attempt to dispense with collation through a declaration in her olographic testament is invalid for want of the form required by C.C. arts. 1323 and 1501. Succession of Pierson, 339 So.2d 1337 (La. App. 3d Cir.1976), writs refused, 342 So.2d 216, 217 (La.1977).

Issue # 2
We now turn to the opponents' contention that the legacy of the house to Chidlow is invalid under C.C. art. 1510 and because it impinges on their legitime.
C.C. art. 1510 provides:
When the value of donations inter vivos exceeds or equals the disposable quantum, all dispositions mortis causa are without effect.
The opponents point out that the inter vivos donations by the decedent total $1,811,982.27, an amount far in excess of the disposable portion of $822,093. Therefore, they conclude the attempted testamentary donation of the house to Chidlow is invalid under C.C. art. 1510. The proponents contend that article 1510 is inapplicable to donations inter vivos to forced heirs and, thus, inapplicable here.
The purpose of C.C. art. 1510 is to insure that the legitime of forced heirs is not impinged upon. Succession of Pierson, 365 So.2d 507 (La.App. 3d Cir.1978), writ refused, 366 So.2d 575 (La.1979).
Inter vivos gifts to forced heirs which have not been validly exempted from collation are attributed to the legitime and such gifts do not activate the provisions of C.C. art. 1510. Succession of Pierson, 365 So.2d 507 (La.App. 3d Cir.1978), writ refused, 366 So.2d 575 (La.1979).
All inter vivos gifts received by decedent's children are subject to collation and must be attributed to the legitime. Only $377,268 of the inter vivos donations made *739 by decedent were not directly received by her children and that amount, at their request, was directed to decedent's grandchildren. Though we later determine in our resolution of the issue of collation that the gifts to the grandchildren were in effect gifts to their respective parents, we here point out that should these gifts be construed as having been made direct to the grandchildren C.C. art. 1510 is still inapplicable. While such gifts would not be subject to collation under C.C. art. 1239 and therefore would be attributable to the disposable portion, the value of the gifts to grandchildren is far less than the disposable portion and for that reason the legacy to Chidlow is not invalid under C.C. art. 1510. We further note that the value of the gifts to the grandchildren when added to the value of the legacy to Chidlow is substantially less than the disposable portion.
The opponents also argue that the testamentary disposition to Chidlow is invalid because it impinges upon their legitime. This argument is based on the reasoning used by the district judge to invalidate the bequest.
The active mass, legitime and disposable portion are calculated with reference to the date of death value of things given inter vivos and the decedent's property. C.C. art. 1505 A.[11]
The active mass of this decedent's estate is $2,466,279. The legitime is $1,644,186, or $411,046.50 for each child.
Each child has received inter vivos gifts attributable to his legitime with a value of $327,239.57. From the assets decedent owned at her death each child will receive an additional $99,574.14. Thus, using date of death values for the assets, each of decedent's children will receive at least $426,813.71 or over $15,000 more than his legitime.[12]
However, because many of the items received through inter vivos donations were movables which have greatly appreciated, if the valuations are made in accord with C.C. art. 1283[13] the result is different. Under article 1283 movables are valued as of the date of the gift and their appreciation would not be considered in calculating the amount received by the heirs though it would be considered under article 1505 A in calculating the legitime. Thus, the application of article 1283 tends to produce a "valuation gap" which understates the value of items received by forced heirs towards their legitime.
There is only one legitime and only one disposable portion. They are compliments of each other and their total always equals the active mass of the decedent's estate. The only proper method for the calculation of the legitime and disposable portion is that set out in C.C. art. 1505. Succession of Gomez, 226 La. 1092, 78 So.2d 411 (1955).
We note that C.C. 1283 is contained in a section of the code entitled, "How Collations Are Made," while C.C. 1505 is contained in a section of the code entitled, "Of the Reduction of Dispositions Inter Vivos or Mortis Causa; of the Manner in Which It is Made; and of Its Effects." Reduction and collation are entirely separate and distinct matters and they are governed by separate codal rules. Ellis v. Benedict, 408 So.2d 987 (La.App. 2d Cir.1981).
In their resort to C.C. art. 1283 both the opponents and the district judge fail to *740 appreciate the differences between the reduction and collation. The possible invalidity of the bequest for impingement of the legitime is an issue of reduction and the articles on reduction and C.C. art. 1505 in particular should be applied.
The error of applying C.C. art. 1283 is best illustrated by an example. Parent has three children. His disposable portion would be one-third and the legitime would be two-thirds.[14]
During Parent's life he makes donations of stock with a date of gift value of $5,000 to each of his children. At his death Parent's net assets are $100,000 and the value of the stock given to each child has increased to $50,000. The active mass of Parent's succession would be $250,000, the legitime $166,667 and the disposable portion $83,333.
After distribution of Parent's estate the children would have received a total value of $250,000 in the form of $150,000 through donations inter vivos and $100,000 at death. However, if article 1283 were applied the children would have received only $115,000 in the form of $15,000 inter vivos and $100,000 at death. Using article 1283 valuation even though Parent's children received everything he had they still would not have received their legitime and there would be no disposable portion.
It is absurd that forced heirs could receive everything their ancestor had and still be entitled to more, yet this is the effect of the application of C.C. art. 1283 to reduction. Statutes should not be construed so as to produce absurd results. Khaled v. Khaled, 424 So.2d 370 (La.App. 2d Cir.1982). In construing C.C. art. 1283 to apply to reduction, the district judge erroneously construed the article so as to produce absurd results.
The proper basis to calculate whether heirs have received their legitime is provided by C.C. art. 1505. On that basis the heirs have received their legitime and the legacy to Chidlow is valid.

Issue # 3
Finally, we consider whether collation is due.
The central issue with respect to collation is whether the inter vivos donations to the grandchildren may be attributed to their parents. If so, all of decedent's children have been treated equally, aside from the legacy to Chidlow, and no collation is due.[15] However, if not, John, Jr., has received more than the other children and collation would be due from him.
The purpose of collation is to equalize the portions received by forced heirs, excluding donations made as extra portions. C.C. art. 1229.[16]Succession of Gomez, supra.
An inter vivos donation to a presumptive heir is presumed to be an advance on his inheritance. C.C. art. 1229.
The renunciation of one's inheritance in favor of another is considered an acceptance of the inheritance. C.C. arts. 1002,[17] 1003.[18]
*741 The stipulated facts show that the decedent offered equal gifts to all her children on every occasion when she made gifts, including 1973. However, in 1973 only John, Jr., chose to accept the gift for himself. Robert, Florence and May instead directed their mother to give their portions to their children or to trusts for them.
The donations offered by decedent in 1973 were, in effect, offers of advances on their inheritance to her children. The action of Robert, Florence and May in directing their mother to give their portions to their children was no more than a renunciation in favor of their children and should be considered as an acceptance by them.[19]
The opponents contend articles 1002 and 1003 can only be applied to an inheritance from a deceased ancestor. We can discern no sound reason why the rules enunciated in these articles should not be applied to inter vivos donations that are designated by the code to be considered advances on the inheritance.
All decedent's children were treated equally in 1973 as they were on every occasion that decedent made inter vivos donations. The donations received by decedent's grandchildren are attributable to their parents and no collation is due.
For the foregoing reasons the judgment appealed is REVERSED and there is judgment herein ordering and authorizing Louisiana Bank and Trust Company, the provisional administrator of the succession of Lois May Smith Hendrick, to distribute the remainder of the succession assets according to the Tableau of Distribution. All costs are taxed against Robert S. Hendrick and Florence Hendrick Wray.
NOTES
[1] The proponents contend that the district judge erred in:

a) failing to carry out the decedent's wishes as set forth in her will;
b) effectively holding that the rules for collation superseded C.C. art. 1505 on determining the disposable portion;
c) failing to recognize that collation and reduction are separate and distinct matters governed by separate rules;
d) failing to recognize that where the legitime has been impinged upon a forced heir's remedy is reduction not collation; and
e) determining whether the legitime was impinged by the improper application of articles on collation.
[2] The opponents contend that the district judge erred in:

a) ordering collation by all the decedent's children; and
b) holding that gifts by decedent to her grandchildren were attributable to their parents.
[3] All values refer to the value at the date of the decedent's death unless otherwise specified.
[4] The entire will reads:

"I, Lois Smith Hendrick, a resident of Shreveport, La., do hereby declare this to be my last will and testament. I hereby revoke all wills and codicils which I have heretofore made.
I.
I give and bequeath to my daughter, May H. Chidlow, the land and improvements thereon which I am presently occupying as my home and which is municipally known and numbered as 404 Evangeline, Shreveport, Louisiana, and is described as
Lot fourteen (14) of Block "A" of East Ridge, a subdivision in Shreveport, Louisiana.
2.
I declare that all gifts which I have made to any of my children during my or their lifetime were given as extra portions and are extra portions for which neither any such child nor the heirs of any such child shall be required to account, or collate. I also declare that any gifts to my daughter, May H. Chidlow, made by this will which are in excess of any gifts made at any time to any of my other children are also given as extra portions, for which neither my said daughter, May H. Chidlow, nor her heirs shall be required to account or collate.
Thus wholly written dated and signed in my own handwriting at Shreveport, Louisiana, on this the 25th day of June, 1974.
 Lois Smith Hendrick"

[5] These figures are rounded to the nearest dollar.

Since the decedent's death C.C. art. 1493 has been amended to reduce the legitime under these circumstances to one-half. See C.C. art. 1493 (Supp.1981).
[6] C.C. Art. 1230. Collation must take place, whether the donor has formerly [formally] ordered it, or has remained silent on the subject; for collation is always presumed, where it has not been expressly forbidden.
[7] C.C. Art. 1231. But things given or bequeathed to children or other descendants by their ascendants, shall not be collated, if the donor has formally expressed his will that what he thus gave was an advantage or extra part, unless the value of the object given exceeds the disposable portion, in which case the excess is subject to collation.
[8] C.C. Art. 1232. The declaration that the gift or legacy is made as an advantage or extra portion, may be made, not only in the instrument where such disposition is contained, but even afterwards by an act passed before a notary and two witnesses.
[9] C.C. Art. 1501. The disposable quantum may be given in whole or in part, by an act inter vivos or mortis causa, to one or more of the disposer's children or successible descendants, to the prejudice of his other children or successible descendants, without its being liable to be brought into the succession by the donee or legatee, provided it be expressly declared by the donor that this disposition is intended to be over and above the legitimate portion.

This declaration may be made, either by the act containing the disposition, or subsequently by an instrument executed before a notary public, in presence of two witnesses.
[10] C.C. Art. 1233. The declaration that the gift or legacy is intended as an advantage or extra portion, may be made in other equivalent terms, provided they indicate, in an unequivocal manner, that such was the will of the donor.
[11] C.C. Art. 1505 A. To determine the reduction to which donations, either inter vivos or mortis causa, are liable, an aggregate is formed of all the property belonging to the donor or testator at the time of his decease; to that is fictitiously added the property disposed of by donation inter vivos, according to its value at the time of the donor's decease, in the state in which it was at the period of the donation.
[12] John Hendrick, Jr., has received an additional $125,756 through his portion of the 1973 donations and Chidlow will receive an additional $256,000 under the will.
[13] C.C. Art. 1283. When movables have been given, the donee is not permitted to collate them in kind; he is bound to collate for them by taking less, according to their appraised value at the time of the donation, if there be any annexed to the donation. In default thereof, recourse may be had to other evidence to establish the value of these movables at the time of the donation.
[14] We use the law applicable to this case in our example.
[15] Legacies are not subject to collation because they are presumed to be extra portions. Jordan v. Filmore, 167 La. 725, 120 So. 275 (1929).
[16] C.C. Art. 1229. The obligation of collating is founded on the equality which must be naturally observed between children and other lawful descendants, who divide among them the succession of their father, mother and other ascendants; and also on the presumption that what was given or bequeathed to children by their ascendants was so disposed of in advance of what they might one day expect from their succession.
[17] C.C. Art. 1002. The donation, sale or assignment, which one of the coheirs makes of rights of inheritance, either to a stranger or to his coheirs, is considered to be, on his part, an acceptance of the inheritance.
[18] C.C. Art. 1003. The same may be said, 1st, of the renunciation, even if gratuitous, which is made by one of the heirs in favor of one or more of his coheirs; and 2d, of the renunciation, which he makes in favor of all his coheirs indistinctly, when he receives the price of this renunciation.
[19] C.C. Art. 1239, which provides that gifts to grandchildren whose parents are living, are not subject to collation, relied on by opponents is of no avail to them here. The issue is not collation by them of gifts received by their children but whether those gifts were, in effect, received by them.