| iCALOGERO, Chief Justice,
dissenting.
In the instant case, the majority concludes that inter vivos donations made to all of the decedent’s forced heirs in equal amounts during the same calendar year should be included in the Civil Code article 1505 calculation used to determine the active mass of the decedent’s succession. For the numerous reasons given hereinbelow, I disagree.
Though since amended, at the time relevant to the instant matter, the second paragraph of Civil Code article 1502 read as follows:
Any donation inter vivos, from the donor to his descendants, exceeding the quantum of which a person may legally dispose to the prejudice of forced heirs, is not reducible to that quantum if each such forced heir and the root represented by each forced heir receives the same value of property by donation inter vivos during the calendar year. Such donation inter vivos shall not be included in the calculation of the disposable portion as set forth in Article 1234 nor as set forth in Article 1505.
| 2LaCiv.Code ANN. art. 1502 (West 1987).[1]
Although the above-quoted statute is devoid of any such limiting language, the majority nonetheless concludes that the exemption of such gifts from the article 1505 calculation applies only “in a forced heir’s action for reduction against a donee who is also a descendant of the decedent.” Op. at 1317. The majority justifies this jurisprudential limitation of the exemption by characterizing its interpretation as “consistent with the 1981 legislative theme that disfavored forced heirs.”[2] Id. at 1317.
The majority’s interpretation — without doubt — disadvantages the instant forced heirs, by requiring the inter vivos donations to be included in the article 1505 calculation and, thereby, permitting the value of these donations to be imputed toward the satisfaction of legitime of the forced heirs. See Succession of Hendrick, 430 So.2d 734, 738 (La.App.2d Cir.1983); Succession of Pierson, 365 So.2d 507, 512 (La.App. 3d Cir.1978); see also 3 Chaeles C. Aubry & Charles C. Rau, Droit Civil Franoais § 684b, at 234 n. 35 (La.St.L.Inst. trans., 6th ed. 1969). Yet, this “anti-forced heirship” result is simply not supported by the plain language of the article, the purported legislative intent of the provision, the interpretation of the provision by noted academics, or the placement of the provision in Chapter 3, of Title 2 in Book III of the Civil | -¡Code, which is entitled “Of the Disposable Portion, and Of Its Reduction in Case of Excess,” as opposed to placement in Chapter 11, of Title 1 in Book III of the Civil Code, which is entitled “Of Collations.”
Plain language of article 1502. First and foremost, the majority’s interpretation disregards the statutory directive contained in the last sentence of former article 1502: “Such donation inter vivos shall not be included in the calculation of the disposable portion as set forth ... in Article 1505.” LaCiv.Code Ann. art. 1502 (West 1987). In clear and unambiguous terms, former article 1502 excludes from the article 1505 calculation inter vivos gifts of equal value made to each forced heir and the root represented by each *1319 forced heir during the same calendar year. Civil Code article 9 provides as follows:
When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature.
La.Civ.Code Ann. art. 9 (West 1993). Although the exclusion of these gifts operates to the benefit of the forced heirs in the instant case, such a result cannot be properly characterized as the “absurd consequence” alluded to in article 9. See, supra, note 2. Moreover, as illustrated below, any benefit received by the forced heirs by the exclusion of such gifts from the article 1505 calculation is merely incidental to the stated legislative purpose of the second paragraph of former article 1502.
Legislative intent of article 1502. As recognized by the majority, the purported legislative purpose behind the enactment of the exemption in former article 1502 was to permit donors to take full advantage of the annual exclusions from gift taxes.[3] Prior to the enactment of the exclusion, donors could, of ^course, give inter vivos donations of equal or unequal value to their forced heirs during the same calendar year and take advantage of the annual exclusion from gift taxes for gifts valued up to $10,000 per person. However, these donations were subject to reduction, which could have lead to unintended or undesired inequities among the forced heirs. For example, suppose that the donor gave each of his children a gift valued at $10,000 during 1975, with Child A receiving $10,000 worth of stock, Child B receiving a vacant lot worth $10,000, and Child C receiving $10,000 in cash. If the donor died in 1980, prior to the enactment of the exemption, all of the gifts given in 1980 would have been included in the article 1505 calculation, valued at the time of the donor’s death. See La.Civ.Code Ann. art. 1505 (West 1987).[4] Thus, when the donor died in 1980, the gifts — though equal in value when received— might have grossly different values. For example, in 1980, Child A’s stock might have reduced in value substantially, to say $500, whereas Child B’s lot might have increased in value to $20,000, and Child C’s cash, for the limited purpose of valuation, would still have been worth $10,000. The article 1502 exemption of these gifts from the article 1505 calculation, by conferring a statutory exemption from reduction, obviated the need for revaluing these gifts at the time of the donor’s death and for determining which value should be imputed to each forced heir’s legi-time. Therefore, the exemption — though conferring an incidental benefit to forced heirs — was consistent with other 1981 “anti-forced heirship” legislation insofar as it unshackled the donor’s right to bestow inter vivos gifts free from latér claims of reduction.
Academics’ interpretation of article 1502. Despite the majority’s conclusion that the article 1502 exemption is applicable only “in a foreed heir’s 15action for reduction against a donee who is also a descendant of the decedent,” op. at 1317, the majority of Louisiana’s civilian scholars have neither recognized nor espoused such a limitation. Rather, the scholars are nearly unanimous in interpreting former article 1502 to effect a blanket exclusion of inter vivos gifts of equal value made to all forced heirs during the same calendar year from the article 1505 calculation of the active mass. Period. See 10 FREDERICK William Swaim, Jr. & Kathryn Venturatos Lorio, Louisiana Civil Law TREATISE: SüCCESSION AND DONATIONS'§ 11.6, at 274 n. 1 (1995) (“1981 LaActs No. 765, § 1 amended La.Giv.Code art. 1502 to exclude from the Article 1505 calculation ‘any donation inter vivos, from the donor to his descendants if each such forced heir and the root represented by each forced heir receives the same value of property by donation inter vivos during the calendar year.”); Katherine Shaw Spaht, Forced Heirship Changes: The Regrettable “Revolution” Completed, 57 La L.Rev. 56, 109 (1996) (recognizing that the *1320 1996 amending legislation eliminated the article 1502 exemption from the article 1505 calculation “of gifts of equal value made to ‘each forced heir and the root represented by each forced heir’ during a calendar year_”); Cynthia A. Samuel et ah, Successions and Donations, 45 La.L.Rev. 575, 585 (1984) (After listing those items that were statutorily immune from reduction claims, including “donations to descendants when each forced heir and the root represented by each forced heir have received the same value in donations during the calendar year,” the authors conclude that “[n]one of the property subject to these exemptions is fictitiously added to the active mass-”).[5]
[placement of article 1502. Finally, if the legislature had intended the exclusion of the gifts from the article 1505 calculation to apply only in reduction contests between forced heirs, then it would have placed the exemption in Civil Code article 1234, which concerns collation between forced heirs when the legitime is impinged, rather than in article 1502, which concerns the broader concept of reduction. Civil Code article 1234, entitled “Reduction of donations exceeding disposable portion; calculation of the legitime,” reads, in pertinent part, as follows:
If, upon calculation of the value of advantages thus given, and of the other effects remaining in the succession, such remaining part should prove insufficient to give to the other children their legitimate portion, the donee would then be obliged to collate the sum by him received, as far as necessary to complete such portion, though he would wish to keep the donation, and renounce the inheritance....
La.Civ.Code Ann. art. 1234 (West 1987). This provision of the collation articles applies specifically to reduction claims between forced heirs, requiring forced heirs to collate “advantages” received if the legitime of their co-forced heirs is thereby impinged. Thus, had the legislature intended to exclude from reduction or collation gifts of like value given to each forced heir during the same calendar year only “in a forced heir’s action for reduction against a donee who is also a descendant of the decedent,” then article 1234 would have been the logical article to amend. Instead, the legislature, apparently motivated not so much by wanting to disadvantage forced heirs as by wanting to enable donors to take full advantage of the gift tax exclusions without the possibility of later claims for reduction, placed the exemption in the second paragraph of former article 1502 among the broader reduction articles, which concern the return of all inter vivos and mortis causa donations that exceed the disposable portion, ^without regard to the identity of the persons to whom the gifts were made. In placing the exemption in former article 1502, the legislature must be presumed to have intended that the exclusion would apply to all reduction actions without limit.
In conclusion, I reiterate that former article 1502, which concerns reduction claims, mandates that the gifts at issue shall not be included in the calculation of the active mass: “Such donatioh inter vivos shall not be included in the calculation of the disposable portion as set forth in Article 1234 nor as set forth in Article 1505.” La.Civ.Code Ann. art. 1502 (West 1987). Why not then simply apply the law as it is written, rather than engage in a search for some hidden purpose, as the majority does here? For the reasons given above, I respectfully dissent.

. As noted by the majority, former article 1502 was amended by 1996 La.Acts, No. 77, which repealed the above-quoted portion of former article 1502 and reenacted the first paragraph of the former article as present Civil Code article 1503.

. Although I find the majority’s argument regarding the legislative intent of former article 1502 to be unconvincing, I note, for the record, that even the exclusion of such gifts from the article 1505 calculation can be painted as consistent with "the 1981 legislative theme that disfavored forced heirs,” as the exclusion permitted a donor to disfavor a later bom child in competition with existing forced heirs. For example, in the absence of the article 1502 exemption, inter vivos gifts given to each of a donor’s then-existing forced heirs would be subject to reduction upon the birth of another child. The value of the gifts would be included in the article 1505 calculation, thereby inflating the value of the active mass and giving the later-born forced heir a larger legitime. Thus, it should be noted that, at least in some instances, the article 1502 exemption operates to the disadvantage of certain forced heirs — a result that the majority would no doubt agree is consistent with their argument concerning the "anti-forced heirship” sentiment of the 1981 legislature.

. See comments made by Senator Brinkhaus, the bill’s author, as recorded in the minutes of the Committee on Judiciary A Meeting held on June 9, 1981.

. Civil Code article 1505 has since been amended to require valuation as of the time that the donations were made. 1996 La.Acts, No. 77, § 1.

. I note that when Samuel first interpreted former article 1502 in 1981, she opined that the exclusion from the article 1505 calculation might not apply if reduction were sought from "a donee other than the donor’s descendant." Cynthia A. Samuel, The 1981 Regular Legislative Session: Successions, Donations, Matrimonial Regimes, and Family Law, 34 LaB.J. 115, 118 (1981). However, as noted above, in her more recent interpretation of former article 1502, no mention is made of any such limitation.