SHORTESS, Judge.
Alice Borders King (plaintiff) sued National Tea Company (defendant) for damages she sustained as a result of a slip and fall which occurred at defendant’s retail food outlet located in East Baton Rouge Parish on July 19, 1982. Upon completion of trial, the court found defendant liable and awarded plaintiff $616.60 in special damages and $1,000.00 in general damages. Plaintiff has appealed the damages award, contending that it was insufficient.
Plaintiff argues that the abuse of the “much discretion” rule enunciated in Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976), should not be the test in this review since the trial court erred in its factual conclusions and that the “manifest error” rule as enunciated in Arceneaux v. Domingue, 365 So.2d 1330 (La.1978), should be applicable. We agree with this argument. Our appreciation of this record convinces us that the “manifest error” rule, rather than the abuse of the “much discretion” rule, should apply to this review.
After the accident, plaintiff was taken to the emergency room of Our Lady of the Lake Hospital where she received emergency room treatment and x-rays were taken. A diagnosis of contusion of both knees was made by Dr. Roy Folse, emergency room physician. On August 19, plaintiff was seen by her family physician, Dr. Milton O. Holt. His examination was essentially negative. In fact, he found that she had recovered from her contusions. Plaintiff, however, returned to Dr. Holt on November 4 with complaints of recurrent pain and tenderness in her right knee. Dr. Holt found no evidence of any new injury, and his examination was again negative. He advised plaintiff to see an orthopedic surgeon.
Plaintiff was seen by Dr. Robert Raba-lais, an orthopedic surgeon, initially on February 11, 1983. At that time she complained of off and on pain in her right knee which was worse with prolonged sitting, walking or standing and particularly after *385 driving her school bus.[1] Dr. Rabalais’ examination revealed tenderness over the medical aspect of the patellar tendon, but his review of the x-rays was unremarkable. His diagnosis was chronic patellar tendonitis with chondromalacia. He prescribed anti-inflammatory medications and told plaintiff to apply heat to her knee.
He saw plaintiff again in December of 1983. Her complaints were about the same, continued pain especially when driving the school bus. Dr. Rabalais again found tenderness along the medial joint line and also crepitus between the kneecap and the end of the femur. He now felt that it was more of a chondromalacia problem than tendonitis. He described a different anti-inflammatory drug along with a two-week regimen of physical therapy and prescribed a knee sleeve. He also told plaintiff not to drive her school bus for a week.
Dr. Rabalais saw plaintiff for the last time on December 29, 1983. She told him that the knee sleeve helped but that the medicine made her sick. Her symptoms were improved so he told her to return to work but to try to get a smaller bus with an automatic transmission.
Dr. Rabalais was of the opinion that plaintiff’s fall at defendant’s store was the cause of the onset of her knee symptoms but may or may not have been the cause of the condition. He felt that her condition would improve if she took care of her knee, did her exercises and did not aggravate or re-injure it. He characterized her chondro-malacia as chronic and while he could not be definite, he was of the opinion that the condition perhaps might be permanent. Although plaintiff exhibited a full range of motion, she had pain and discomfort which Dr. Rabalais described as a classic condition for bus and truck drivers. He felt that if she was not a school bus driver she would not have the problem, but since she was, it was a chronic off and on situation which could last a lifetime. He did not feel that surgery was indicated based on his last examination and would not assign any degree of permanent disability.
Plaintiff testified that the more she drives, the worse her knee gets; that she asked for a smaller bus but as of the date of trial was still driving the big bus with a standard transmission; that she uses both legs constantly while driving the bus; that she does her leg exercises five times a day at home; and that she takes Tylenol for pain before bed.
The only medical evidence in this case was from Dr. Rabalais, and his deposition was introduced in evidence rather than live testimony. Accordingly, we need not apply the manifest error rule to his testimony because we are in as good a position to assess the weight it should be given as was the trial court. Conrad v. Jack Donahue Contractors, Inc., 450 So.2d 1035 (La.App. 1st Cir.1984). The trial court, in oral reasons, made the following findings of fact:
though I think the plaintiff may be having some problems with her knee, I do not feel that all of those problems have been proven by a preponderance of the evidence to be related to this slip and fall.
The trial court clearly erred in this finding. Our review of the record shows there was no evidence to substantiate that finding. On the contrary, the evidence clearly showed that this lady had no problem with her knees prior to the accident, and since the date of the accident she has had symptoms of chondromalacia which have become chronic and are more severe after prolonged driving. Her occupation as a school bus driver, which necessitates driving a large school bus with a standard transmission and no power brakes, aggravates *386 her condition. She drives about 90 miles a day and takes two loads of students in the mornings and two loads in the afternoons. Dr. Rabalais felt that she would continue to have these problems as long as she drove the large school bus, notwithstanding his regimen of daily exercises which he had prescribed and which he testified she did on a daily basis.
While the cause of plaintiffs chon-dromalacia may be open to argument, this record leaves no doubt that the accident aggravated plaintiff’s pre-existing condition, assuming the chondromalacia was not caused by this trauma. It makes no difference whether the accident caused or only aggravated plaintiffs condition because the defendant must take her as it finds her.
We are not constrained by the Coco v. Winston Industries standard of raising the award to the lowest reasonable award because manifest error rather than abuse of discretion is involved in this ease. We feel that an award of $10,000.00 (which includes the minimal loss of wages which the trial court probably inadvertently failed to include) will fully compensate plaintiff for her damages in this case, and accordingly, we amend the award of the trial court. In all other respects, the trial court’s award is affirmed, all at defendant’s costs.
AFFIRMED AS AMENDED.

. Plaintiff was employed as a school bus driver for the East Baton Rouge Parish School Board and drove a large yellow school bus. At the time of the accident she was a substitute driver but averaged driving four or five times a week. In 1983 she was employed full time, and her route was about 90 miles a day which included two morning and afternoon loads: The bus she drove had a regular transmission, so it was necessary for her to use a clutch and brake constantly.