506 So.2d 669 (1987)
Donovan S. WILLIE
v.
BARRIERE CONSTRUCTION CO., INC.
No. 86-CA-717.
Court of Appeal of Louisiana, Fifth Circuit.
April 13, 1987.
Rehearing Denied May 18, 1987.
*670 Floyd J. Falcon, Jr., John L. Avant, Avant & Falcon, Baton Rouge, for plaintiff-appellant, Donovan S. Willie.
Kevin O'Bryon, Hammett, Leake and Hammett, New Orleans, for defendant-appellee, Barriere Const. Co., Inc.
Before KLIEBERT, BOWES and GOTHARD, JJ.
KLIEBERT, Judge.
The plaintiff, Donovan S. Willie, an employee of Jimmie Willie Construction Company, appealed devolutively from a judgment awarding him $13,500.00 as damages for personal injuries sustained in a fall from a scaffold caused by defendant Barriere Construction Company's employee, Clayton Marino. The judgment also awarded to Maryland Casualty Company, Willie Construction Company's intervening workmen's compensation insurance carrier, reimbursement for "thirteen (13) weeks of compensation paid to plaintiff and any medical bills incurred for the treatment of the rib and spinal tendon and musculature injuries." The defendant, Barriere filed an answer to the appeal. Maryland, the intervenor, did not appeal or answer the appeal. For the reasons hereinafter stated, we amend the judgment and, as amended, affirm.
Prior to the hearing set on the merits in this court, defendant Barriere filed in this court a motion to stay the proceedings. The motion was based on the contention a new trial was granted and a hearing set for February 23, 1987. We denied the request for the stay order. Although no motion to dismiss the appeal was filed, in his brief on the merits, counsel for defendant questions our jurisdiction over the appeal because of the pendency of a motion for a new trial when the appeal order was entered.
Hence, we will address the jurisdictional issue before considering the merits.

JURISDICTION
In his reasons for judgment the trial judge had indicated an "evidentiary hearing" or a stipulation might be necessary to establish the dollar amount of the medical expenses for which the intervenor, Maryland Casualty, was entitled to reimbursement. On July 28, 1986 the intervenor filed a motion for a new trial or alternatively an evidentiary hearing. Subsequently, on intervenor's motion, an order was signed on August 30, 1986 setting a hearing to show cause on October 8, 1986 why the judgment should not be set aside or alternatively why intervenor should not be allowed to separate and identify for the court those medical expenses paid by it relating to the injuries found by ... [the court] to be caused by the accident on April 24, 1984.
Notwithstanding the intervenor's prior motion for a new trial, the trial court on September 8, 1986, on the motion of the plaintiff filed on August 12, 1986, granted to plaintiff a devolutive appeal. The show cause order and the devolutive appeal order were signed by the judge regularly assigned to the division, rather than the trial judge. The appeal record was lodged in this court on November 26, 1986. It contains a minute entry dated October 8, 1986 *671 stating "motion for a new trial denied, Judge Zaccaria to correct judgment. Attorneys to submit stipulations." (There is no written judgment to that effect in the record.) The record does contain a joint stipulation to the effect that intervenor had paid plaintiff $10,094.00 in weekly compensation benefits and $6,385.30 in medical expenses prior to July 19, 1985. (Counsel for defendant had not signed the stipulation but counsel for plaintiff and intervenor had signed.)
Our supreme court in Thurman v. Star Electric Supply, Inc., 283 So.2d 212 (La. 1973) concluded a new trial application by one party does not necessarily extend another party's delay for appealing. Moreover, in a recent case, i.e., Overmier v. Traylor, 475 So.2d 1094 (La.1985) involving the validity of an appeal when the motion for appeal was filed and the order of appeal signed before the judgment appealed from was signed, the supreme court at page 1094 said:
"The correct interpretation of [La.C.C.P.] Article 1911 is that an appeal granted before the signing of a final judgment is subject to dismissal until the final judgment is signed.[1] However, once the final judgment has been signed, any previously existing defect has been cured, and there is no useful purpose in dismissing the otherwise valid appeal." (Footnote omitted)
By analogy to the Overmier case, therefore, when the motion for a new trial was denied on October 8, 1986, the patented defect in the appeal, i.e., pendency of a motion for a new trial, was cured. Hence, there would be no useful purpose in dismissing the appeal on the grounds of prematurity. Moreover, the same act, i.e., denial of the motion for a new trial, divested the trial court of jurisdiction except for the purposes specifically enumerated in La.C. C.P. art. 2088.

MERITS OF THE CASE
On appeal plaintiff argues the award is inadequate because (1) the trial judge failed to make an award for the injuries to his hand and knee, for past and future wage losses, and for medical expenses, and (2) the general damage award for his back and finger injuries was insufficient.[1] Defendant answered the appeal and urged revision in the judgment to (1) reflect the plaintiff's comparative negligence with a commensurate 50% reduction in the damage award, (2) reduce the damages sustained by plaintiff to $7,500.00, and (3) reflect the precise calculation of reimbursement due intervenor to be thirteen (13) weeks of compensation benefits and $3,732.00 in medical expenses. After a careful consideration of the record, for the reasons hereafter stated, we increase the plaintiff's award, adjust the intervenor's award to conform to our holding and, as thus amended, affirm the judgment.
At the time of the accident plaintiff was 45 years of age and employed as a metal lath and drywall hanger by Jimmie Willie Construction Company, earning $15.33 per hour. On April 24, 1984, Willie was hanging metal lath at a construction site in Jefferson Parish. The scaffold on which he was standing was positioned on a sidewalk sixteen inches above the adjoining ground, over which Clayton Marino was operating a Barriere Construction Company self-propelled ground roller. The scaffold was in place early in the day and Marino had noticed it while making several passes over the ground. Marino thereafter attempted to roll the ground parallel to the sidewalk; he sounded no warnings as he approached the area of the scaffold. Willie watched as Marino passed his position and resumed working. However, a railing on the ground roller struck the scaffold with a loud clang and jolted it. Willie lost his balance and fell to the sidewalk some five or six feet below.
*672 Willie was transported by ambulance to Meadowcrest Hospital, treated for injuries and released in time to ride home with his co-workers.[2] Thereafter, Willie consulted with Dr. John Verhulst of Covington, who referred him to Dr. Luis Matta, an orthopedic specialist.[3] Dr. Matta treated Willie conservatively from May through August of 1984 and released him to return to work on several occasions. However, Willie continued to complain of pain in the right hand and knee, and in October of 1984, some two months after filing suit against Barriere Construction Company, he consulted Dr. Joe Morgan, an orthopedic surgeon. Dr. Morgan intervened surgically in January of 1985 in an attempt to alleviate Willie's complaints. Maryland Casualty Company paid compensation benefits and medical expenses throughout this period. At the commencement of the trial it was stipulated into the record that as of the date of trial $19,909.00 in compensation benefits and $7,592.90 in medical expenses had been paid by intervenor. A subsequent written but undated stipulation in the record related that $10,094.00 in compensation benefits and $6,385.80 in medical expenses had been paid as of April 19, 1985. However, in both stipulations counsel for plaintiff specifically retained the right to contest the amount thereof which would be recoverable by intervenor from an award due to plaintiff and counsel for defendant did not sign the written but undated stipulation which is included in the record.
The trial judge awarded Willie $13,500.00 for injuries to his back, ribs and finger, but refused to award damages for the knee and hand injuries which he concluded were unrelated to the accident.
We will first address defendant's contention plaintiff was contributorily negligent and accordingly the award should be limited to 50% of his total damages. Initially, we note that contributory negligence is never presumed. It must be proven as any other factor by a preponderance of evidence. Esco v. Smith, 468 So.2d 1169 (La.1985). The evidence must be sufficient to show the plaintiff failed to act as a reasonable and prudent person would have in like circumstances and that such negligence was a contributing cause of the accident. Beck v. Boh Bros. Construction Co., 467 So.2d 1318 (5th Cir.1985).
Defendant contends the plaintiff was negligent (1) in failing to maintain a proper lookout when the ground roller was near the scaffold; (2) in failing to maintain his balance when the roller struck the scaffold, and (3) in failing to wear a safety belt. However, plaintiff testified that he watched as the roller safely passed his position on the scaffold and had resumed working when the roller struck the scaffold at a point past where plaintiff was standing. Further, he said, and was supported by the testimony of a witness, that the resulting jerk was substantial and caused plaintiff to lose his balance and fall. On these facts the trial court found no negligence by the plaintiff. As the record does not suggest that this finding is clearly wrong, we cannot and indeed will not disturb it. See Arceneaux v. Domingue, 365 So.2d 1330 (La.1979).
We next address the apparent error made by Dr. Matta in his report and by the trial judge in his reasons for judgment. Although Dr. Matta listed treatment days in 1985 and the trial court in its reasons for judgment stated the accident happened in 1985, from the evidence in the record it is apparent the accident happened in 1984 and the treatments occurred in 1984. Hence, in our review of the evidence as to the plaintiff's injuries and disabilities hereinafter discussed, we note the errors and will consider the erroneous dates as corrected to read 1984 and reject plaintiff's contentions as to the injuries and disabilities as predicated on the 1985 dates.

INJURIESGENERAL DAMAGES
Plaintiff contends the accident either caused his knee and hand injuries or aggravated *673 pre-existing latent conditions to such an extent as to render him disabled, and therefore a general damage award for his total disability is appropriate. In support of his contention, plaintiff's counsel urges the presumption of causation, reiterated in Taylor v. Mitcham, 499 So.2d 173 (2nd Cir.1986) at page 176 as follows:
The law recognizes that a medical condition producing disability is presumed to have resulted from an accident if before the accident the injured person was in good health but shortly after the accident the disabling causing condition manifested itself, provided there is a reasonable possibility of a causal connection between the accident and the condition. In order for such a legal presumption to apply, the plaintiff must prove, inter alia, that there is a reasonable possibility of a causal nexus. Health v. Northgate Mall, Inc., 398 So.2d 132 (La.App. 3d Cir.1981); Boykin v. Washington, 401 So.2d 488 (La.App. 2d Cir.1981). The plaintiff must show proof by a reasonable preponderance of the evidence of such a causal nexus and a mere possibility of such a connection is insufficient. Boudreaux v. Terrebone [Terrebonne] Parish Police Jury, 477 So.2d 1235 (La. App. 1st Cir.1985).
Although we have no quarrel with the holding in the case, we disagree with the conclusion drawn from it by the plaintiff because given the medical evidence contained in the record, it is not dispositive of the issues here.
When initially examined on May 10, 1984 by Dr. Matta, Willie complained of pain involving the anterior left chest wall, inability to close the right hand due to pain over the little finger, pain involving the lower back, past soreness and swelling involving the right knee which had subsided, and occasional pain causing the right knee to give way. Dr. Matta diagnosed early traumatic "trigger finger" of the little finger which was to be managed conservatively. He found Willie was recovering well from the rib and back injuries. He found the pain in the right knee was due to a degenerative arthritic condition which preceded the accident. Since Willie was recovering in good fashion, he was discharged without qualification on May 23, 1984 but returned five days later complaining of pain in the right hand and that he was unable to carry sheetrock as requested by his employer. Dr. Matta, at Willie's request, released him for light duty work and instructed him to return for a followup examination in two weeks.
Willie returned seven weeks later (on July 19, 1984) and said he was unable to return to his duties because of pain in the finger, lower back and right knee. Dr. Matta found no objective signs of injury and referred Willie to Dr. Donald Faust, an orthopedic surgeon specializing in hand injuries. From an examination and review of x-rays Dr. Faust concluded Willie suffered from degenerative arthritis of the right knee and small joints of the hand, and mild synovitis of the flexor tendons of the ring, middle and little fingers. He recommended that Willie use the hand fully and take aspirin daily. Willie returned to Dr. Matta on August 2, 1984 complaining of the same symptoms as in his initial visit. Dr. Matta found no objective signs of injury. Willie did not wish to pursue the steroid injection treatment recommended by Dr. Matta, and as Dr. Matta had no alternative treatment, he released Willie for work with the recommendation he consult a hand surgeon if the pain persisted.
Willie, who never returned to work after the accident, filed this tort action on August 20, 1984. On October 30, 1984 he was examined by Dr. Morgan who attributed the pain in the hand to a combination of stenosing tendonitis (trigger finger) and complications from an old, angulated fracture of the fifth metacarpal (in the palm), and the pain in the knee to degenerative arthritic changes and possible internal derangement such as torn cartilage. Dr. Morgan intervened surgically in the finger to release the stenosing flexor tendonitis and arthroscopicly explored the knee. He found no evidence of derangement in the knee, merely uncommonly severe degenerative *674 arthritis; he performed patellofenoral shaving of the arthritic cartilage.
Dr. Morgan was of the opinion that the accident aggravated the arthritis in the knee but declined to relate the complications involving the angulated fracture of the fifth metacarpal to the accident. Dr. Morgan followed Willie's progress and released him to return to work on April 11, 1985. At that time the trigger finger was completely resolved and the only complaints with the hand involved the old fracture. According to Dr. Morgan the knee was stabilized and actually improved over pre-injury status. Nevertheless, Willie returned on May 8, 1985 complaining of pain in the knee and on May 20, 1985 complaining of pain and swelling in the finger. The finger problem, which was diagnosed as carpal tunnel syndrome, was resolved by cortisone injection; Dr. Morgan was unable to relate the condition to the accident.
The trial court clearly erred in finding the knee injury was unconnected to the accident. The lay testimony established that Willie had no problem with his knee prior to the accident. The arthritis, although present, was not symptomatic, and although Dr. Morgan stated a severe case of arthritis such as the plaintiff's was ultimately going to become symptomatic, he felt the accident did aggravate the condition. It makes no difference whether the accident caused or only aggravated plaintiff's condition because the defendant must take him as he finds him. See King v. National Tea Co., 479 So.2d 383 (1st Cir. 1985).
We must reach a different conclusion, however, in regards to the complaints involving the old angulated fracture. The presumption of causation has no application to the complaint as there was no showing the old fracture was in any way aggravated by the accident, although the discovery of its existence might be attributable thereto. Dr. Morgan specifically stated the condition of the fracture was unrelated to the accident, and in the absence of countervailing medical testimony, we cannot say the trial court erred in making such a factual finding. Arceneaux v. Domingue, supra.
The trial court awarded plaintiff $13,500.00 in general damages for the injuries to his back and finger. We find no abuse of discretion and hence will not disturb that award. See Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976). However, we amend the general damage award to provide damages for the knee injury. We conclude the lowest amount the trial court could have awarded plaintiff for his knee injury, which took one year to resolve, is $6,500.00. Accordingly, the general damage award is increased to $20,000.00. In Palmer v. Stokes, 444 So.2d 213 (1st Cir.1983), plaintiff's general damage award for injuries to her knee, neck and shoulder and surgery on her index finger was increased to $20,000.00.

LOST WAGES
It is evident from his reasons for judgment the trial judge did not allocate any amount for loss of income or impairment of earning capacity. Considering the evidence introduced at trial, we find the trial court abused its discretion in not awarding lost wages from the date of the accident until plaintiff was released by Dr. Morgan on April 11, 1985. We consider April 11, 1985 as the cutoff date because as of that date the finger injury was completely resolved and the knee had, by Dr. Morgan's account, been corrected by surgery to better than pre-injury status.
Plaintiff grossly overstates his average monthly salary while employed by Willie Construction Company as $2,334.56. Earnings records introduced by plaintiff show an average monthly salary of $1,970.95 and an average weekly salary of $469.27. Plaintiff's accident-related injuries were resolved as of April 10, 1985, fifty weeks after the accident. Based on an average weekly wage of $469.27, we compute past lost wages to be $23,463.35 and award this amount to plaintiff.

*675 MEDICAL EXPENSES
The trial judge declined to award medical expenses since testimony concerning the medical bills did not break down the amount incurred for treatment of the respective injuries. He suggested that the parties stipulate as to the amount. However, as we have determined the knee injury was causally related to the accident, plaintiff is entitled to all medical expenses incurred prior to the date Dr. Morgan released him to return to work.[4] Intervenor and plaintiff have stipulated that $6,385.80 in medical expenses were paid during this period. Accordingly, plaintiff is awarded $6,385.80 for medical expenses.

INTERVENOR'S CLAIM
The intervenor and plaintiff have also stipulated $10,094.00 in compensation benefits were paid as of April 19, 1985. The intervenor is entitled to reimbursement of the compensation benefits from plaintiff's award for lost wages. LSA-R.S. 23:1101 et seq.; Fontenot v. Hanover Ins. Co., 385 So.2d 238 (La.1980). Intervenor is likewise entitled to reimbursement for the medical expenses which it paid from plaintiff's award for medical expenses. See Cross v. Hingle, 475 So.2d 1384, 1385 (5th Cir.1985).

CONCLUSION
For the foregoing reasons the judgment of the trial court is amended to raise the general damage award to $20,000; to award lost wages in the amount of $23,463.35, and to set the medical expense award at $6,385.80. Additionally, we amend the judgment to set the amount of reimbursement due intervenor for compensation benefits at $10,094.00, and for medical expenses at $6,385.80. As amended, the judgment of the trial court is affirmed. All costs of this appeal are to be borne by the defendant-appellee, Barriere Construction Company, Inc.
AMENDED AND, AS AMENDED, AFFIRMED.
NOTES
[1] Plaintiff also seeks to have Clayton Marino and North River Insurance Company, who were named defendants in a supplemental petition, cast in judgment. However, neither party filed an answer and preliminary defaults were not taken. Marino did testify as a fact witness, but the record does not show he was served with the supplemental petition. As the parties are not before the court, they cannot be cast in judgment. See Sciortino v. Alfano, 435 So.2d 1010 (5th Cir.1983); Humphrey v. Gauthreaux, 458 So.2d 182 (5th Cir.1984).
[2] The Meadowcrest records were not produced at trial. Hence, the extent of plaintiff's immediate injuries and the treatment thereof is unknown.
[3] No evidence as to Dr. Verhulst's findings was introduced. Dr. Matta's reports were introduced by defendant.
[4] There is no indication in the record that any expenses were incurred for treatment of the fifth metacarpal.